BRYAN WILSON (CA SBN 138842)
BWilson@mofo.com
YUE LI (CA SBN 287280)
YLi@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone: 650.813.5600

C. JASON SMITH (CA SBN 237966)
cjsmith@smplawcorp.com
SMITH, McDOWELL & POWELL
A LAW CORPORATION
100 Howe Avenue, Suite 208 South
Sacramento, California 95825
Telephone: 916-569-8100

Attorneys for Plaintiff and Counter-Defendant
CSPC DOPHEN CORPORATION

Sean Hu, Ph.D.
SeanHu2020@Gmail.com
3840 Collins St.
West Sacramento, California 95691
Telephone: 530 220 5660

*Pro Se*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| CSPC DOPHEN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ZHIXIANG HU, also known as SEAN HU, an individual,<br><br>Defendant.<br><br>ZHIXIANG HU, also known as SEAN HU, an individual<br><br>Counter-Claimant,<br><br>v.<br><br>CSPC DOPHEN CORPORATION, a New Jersey Corporation; CSPC PHARMACEUTICAL GROUP LIMITED, a Hong Kong Corporation; YINGUI LI, an individual; JINXU WANG, an individual; JUMIN SUN, an individual; DONGCHEN CAI, an individual,<br><br>Counter-Defendants. | Case No.    2:17-cv-01895-MCE-DB<br><br>**JOINT STATEMENT RE DISCOVERY DISAGREEMENT RE CSPC DOPHEN'S MOTION TO COMPEL DISCOVERY RESPONSES**<br><br>Date: June 15, 2018<br>Time: 10:00 a.m.<br>Courtroom:  27, 8th Floor<br><br>Complaint Filed:  September 11, 2017<br><br>Trial Date:  None Set |

Pursuant to Local Rule 251, CSPC Dophen Corporation ("CSPC Dophen") and Dr. Zhixiang Hu ("Dr. Hu") submit this Joint Statement re Discovery Disagreement concerning CSPC Dophen's Motion to Compel Discovery Responses from Dr. Hu (ECF No. 52).

## NATURE OF THE ACTION AND
## PARTIES' MEET AND CONFER (L.R. 251(C)(1)&(2))

On September 11, 2017, CSPC Dophen filed this action against Dr. Hu. Among other things, CSPC Dophen seeks to recover its trade secrets and company property (*e.g.*, company email accounts and funds) that were misappropriated by Dr. Hu. (ECF No. 14.)

On October 31, 2017, CSPC Dophen served its First Set of Interrogatories and First Set of Requests for Production of Documents and Things. (Li Decl.[1] Exs. A, B.) Dr. Hu served his responses on November 30, 2017 (Li Decl. Exs. C, D). On December 6, 2017, Dr. Hu produced a laptop and a cell phone in response to CSPC Dophen's discovery requests.

On December 11, 2017, counsel for CSPC Dophen sent a letter to counsel for Dr. Hu, explaining in detail deficiencies of Dr. Hu's discovery responses served on November 30, 2017. (Li Decl. Exs. I, J.) Counsel for CSPC Dophen also sent letters to counsel for Dr. Hu on December 15 and 20, 2017 concerning Dr. Hu's deletion of information on the laptop and cell phone. (Li Decl. Exs. K-M.) Counsel for both parties met and conferred by telephone on December 29, 2017. On January 5, 2018, CSPC Dophen filed a Motion to Compel discovery responses from Dr. Hu. (ECF No. 45.) On January 11, Dr. Hu served his supplemental responses and document production which consists of a total of 262 pages. (Li Decl. Exs. E-G.)

The Court ordered a stay of this case on January 11, 2018 pending resolution of the Voluntary Dispute Resolution Program ("VDRP"). (ECF No. 46.) CSPC Dophen's Motion to Compel was denied as moot. (*Id*.) The parties completed the VDRP on April 11, 2018 and did not reach any resolution. CSPC Dophen re-filed its Motion to Compel on April 16, 2018. (ECF No. 52.) On April 27, 2018, CSPC Dophen re-noticed its Motion to Compel due to Dr. Hu's request for an extension to respond to CSPC Dophen's positions in the joint statement. (ECF No.

---

[1] "Li Decl." refers to the Declaration of Yue Li ISO CSPC Dophen's Motion to Compel.

58.)  Counsel for CSPC Dophen met and conferred with Dr. Hu by telephone on June 4, 2018 and the parties were unable to resolve the disputes raised in CSPC Dophen's Motion to Compel discovery.

At issue is the adequacy of the document production from Dr. Hu, Dr. Hu's deletion of information from the laptop computer and cell phone and failure to preserve evidence, and CSPC Dophen's request for reasonable attorneys' fees and costs.

## COURT'S ORDER GRANTING MOTION TO WITHDRAW

On April 16, 2018, Dr. Hu's former counsel filed a motion to withdraw, which the Court granted on May 29, 2018.  (ECF No. 68.)  The Court ordered Dr. Hu's former counsel to lodge a complete copy of the evidence in light of "the relatively strong indication that spoliation has already occurred or at least been attempted in this case."  (*Id*. at 3.)  The Court also ordered CSPC Dophen to file a status report to advise the Court of the outcome of this motion and seeking access to the lodged evidence if appropriate.  (*Id*.)  Specifically, the Court Order states:

> In light of Plaintiff's representations and the relatively strong indication that spoliation has already occurred or at least been attempted in this case, however, the Court agrees that providing certain materials to Dr. Hu at this stage of the litigation may be risky. Although the Court could admittedly impose sanctions—including terminating sanctions—if it were determined that Dr. Hu destroyed relevant evidence, this is a road the Court would rather not be required to take. Therefore, understanding Plaintiff's spoliation concerns as well as counsel's reservations with violating Rule 3-700, the Court orders Defendant's counsel to lodge a complete copy of the purported backup disc, as well as copies of any other portable storage device in its possession, with the Court not later than ten (10) days following electronic filing of this Order. Once counsel has lodged complete copies, the original evidence may be turned over to Dr. Hu along with any other papers or property. Further, Plaintiff is ordered to file a status report not later than ten (10) days after obtaining a ruling on its pending Motion to Compel, advising the Court of the outcome of that motion and seeking access to the lodged evidence, if appropriate under the terms of the magistrate judge's order.

(*Id*.)

<u>**PARTIES' CONTENTIONS OF DISCOVERY DISPUTES (L.R. 251(C)(3))**</u>

**I.    DR. HU'S DELETION OF INFORMATION AND FAILURE TO PRESERVE EVIDENCE**

    **A.    CSPC Dophen's Contentions**

        **1.    Dr. Hu deleted essentially all information on a laptop using an anti-forensic tool and factory reset a cell phone shortly before returning them to CSPC Dophen.**

On November 30, 2017, in response to CSPC Dophen's discovery requests seeking things that Dr. Hu received from CSPC Dophen, Dr. Hu stated, in a verified response, that he had in his possession a laptop computer and a cell phone. (Li Decl. Ex. C at 3.) On December 6, 2017, Dr. Hu produced the laptop (Dell Vostro) and cell phone (Samsung Galaxy S6)—more than five weeks after receiving CSPC Dophen's discovery requests. (*See* Li Decl. Ex. K.)

Despite Dr. Hu and his former counsel's duty to preserve evidence, serious evidence spoliation on the laptop computer and cell phone has occurred. Specifically, CSPC Dophen's forensic investigation revealed that the cell phone has been factory reset, as if it had never been used. (ECF No. 61-3 (Declaration of Michael Kunkel dated February 18, 2018) at ¶¶ 2, 30.) Further, on December 4, 2017, just two days before Dr. Hu produced the laptop, an anti-forensic evidence elimination tool called CCleaner was used to permanently delete and purge more than one hundred thousand files and forensic artifacts that CSPC Dophen would otherwise have relied on to determine how the laptop was used. (*Id*. ¶¶ 2-3, 12-19.) The CCleaner application was deleted after its use on the same day, presumably to try to conceal the destruction. (*Id*. ¶¶ 12, 13, 30-32.) Due to the effects of the CCleaner, it is impossible for CSPC Dophen to recover the deleted information from the laptop. (*Id*. ¶¶ 12-18.) Dr. Hu has identified a potential backup of the laptop device but has refused to produce it for forensic inspection. (Li Decl. Ex. N, Ex. E at 3-4.) In addition to the purported backup disk, CSPC Dophen's forensics investigation has revealed that a number of external storage devices accessed the laptop prior to the mass deletion, including copying files from the laptop computer, which Dr. Hu refused to produce. (ECF No. 61-3 ¶¶ 20-29.)

**2. The deleted information was relevant to CSPC Dophen's claims.**

Dr. Hu's new argument that the laptop and cell phone do not belong to CSPC Dophen is disingenuous. Dr. Hu made this argument only after his evidence spoliation was uncovered by CSPC Dophen. Dr. Hu previously stated, in a verified response, that the laptop and cell phone were responsive to CSPC Dophen's discovery requests (Li. Decl. Ex. D at p. 3 and Verification page) and produced the laptop and cell phone during discovery. Moreover, CSPC Dophen's forensic investigation has identified file fragments demonstrating that documents relating to CSPC Dophen existed on the laptop prior to the deletion using CCleaner, including for example, information designated as "proprietary" and "confidential." (*See* ECF No. 61-3 ¶ 19.) Moreover, the law presumes that the spoliated evidence "goes to the merits of the case" and "was adverse to the party that destroyed it." *Clear-View*, 2015 U.S. Dist. LEXIS 63579, at *23; *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06- 3359 JF, 2009 U.S. Dist. LEXIS 62668, at *29 (N.D. Cal. July 2, 2009) (citing *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982)).

**3. Dr. Hu and his former counsel have failed to preserve evidence.**

Dr. Hu and his former counsel have failed to preserve evidence. (*See* Li Decl. Exs. K-P.) Nor did they provide any explanation for the destruction of information on the laptop just two days before the production. (*Id.*) Dr. Hu now contends that his wife, Jiaying Fan, owns the laptop and that the laptop contains her personal information. (Li Decl. Ex. E at 3-4; Ex. F at 3; Exs. O, P.) However, even if the laptop and cell phone contained personal information, it was not up to Dr. Hu to determine what documents were personal and should be deleted, particularly when they contained information relating to CSPC Dophen. *See, e.g., Moore v. Gilead Scis.*, Inc., No. C 07-03850 SI, 2012 U.S. Dist. LEXIS 26156, at *10-11 (N.D. Cal. Feb. 29, 2012) ("Moore argues that he had no duty to preserve the 'personal and privileged' contents of his laptop. . . . However, Moore does not explain how, even if true, that would allow him to circumvent the rule requiring preservation of evidence for pending litigation. . . . It was not up to Moore to determine what documents were privileged.") (citing *Leon*, 464 F.3d at 959).

J\ T. S\ TATEMENT RE D\ ISCOVERY D\ ISAGREEMENT RE CSPC D\ OPHEN'S M\ OTION TO C\ OMPEL
C\ ASE N\ O. 2:17-CV-01895-MCE-DB
pa-1820498

4

### B.   Dr. Hu's Contentions

First and foremost, the computer does not belong to CSPC-Dophen, it belongs to my wife, Jiaying Fan. As both the Dell computer and my cell phone were bought in 2011 and my memory faded as who owned them. At the beginning, I was depressed due to the fact that CSPC-Dophen took everything (my patent and project) from me, occupied my lab and fired me. My former attorney and friends asked me what would be the most important thing (out of this matter) to me. I answered, "1) my new drug to go to clinical trials and to get approved to benefit cancer patients, and 2) start my own company again". So, my former attorney and friends advised me to take CSPC-Dophen as a mad dog, give anything it wanted and move on. Without digging any evidence, I said that only thing could belong to CSPC-Dophen would be 1) Dell computer, and 2) my cellphone. The computer had been used by my wife. I told her that I would buy a similar computer and exchange it with her. So, I bought the exact same computer on ebay for $80 and was going to swap the hard disk. As it was hard to take the hard disk out, I had to contact Dell with the computer ID for the installation of Windows system and my wife used USB drive to copy the data. That was the time I found out that my wife's Dell computer purchasing record was still kept by Dell. It was actually purchased by myself before I joined CSPC-Dophen. Receipt showed that the computer was purchased On October 13, 2011 using my personal money (Exhibit 1). I was assuming that it was purchased using CSPC-Dophen's fund or reimbursed by CSPC-Dophen. Apparently, my memory was wrong. My reimbursement record indicated that Dell computer was not reimbursed. During that time, I believed that Dophen was a joint venture between CSPC and me. So, I purchased everything for CSPC-Dophen using my own credit card until the summer of 2012 and did not ask for reimbursement for many items I bought. The Sanyo -80C freezer was another example which was purchased with my own money and CSPC-Dophen only returned it to me on Jan 15, 2018.

In April/May, 2012, CSPC funded the purchase of 4070 Truxel Rd, which was an empty shell building. My wife was architect. I asked her to design the labs for construction. I gave her the Dell computer to use AutoCAD to do the work. And I also told her the computer would be hers in lieu of compensation of the architectural design (See her declaration). Selected emails to

1   confirm her design work for 4070 Truxel Rd shown in exhibit 2.  As my wife also believed that I

2   would own a part of Dophen Biomed, she never asked for additional pay for her work. The cost

3   of the design for a building of 20,000 sqf from scratch would be more than $4000. When CSPC-

4   Dophen took her computer, she sent CSPC a bill to ask to be paid for her design. Yingui Li from

5   CSPC-Dophen refused to pay and said that it was long time ago (Exhibit 3). The only files related

6   to CSPC-Dophen on that computer were the architect design of 4070 Truxel Rd. My wife's other

7   work and children's photos and school work and her personal communications were all on the

8   computer.

9           I also attached the purchasing record of my cell phone with number 530 220 5660 with

10   my own money on Oct 24, 2011 before I joined CSPC-Dophen on Nov 1, 2011 (Exhibit 4). After

11   the purchasing records were dug out, I told my former lawyer that it was my wife's computer and

12   we deleted everything on the computer (even though my wife made a back-up copy to transfer to

13   another computer). I also told my former lawyer that the cellphone belonged to me and I had a

14   full reset before I gave to my former lawyer. Beyond my comprehension, my former lawyer

15   insisted to back up the empty devices (with a pre-charge of $5200) and passed them onto CSPC.

16          CSPC-Dophen might have reimbursed my monthly phone bill in the past. Right now,

17   BRYAN WILSON and YUE LI were paid by CSPC to represent it in court. If Mr. Wilson and Ms

18   Li can tell the court that they both belong to CSPC-Dophen because they got paid, and CSPC-

19   Dophen has the right to open their skulls to check what is inside, my cell phone would belong to

20   CSPC-Dophen and the contents of the Dell computer would be available for viewing.

## II.   DISCOVERY RELATING TO CSPC DOPHEN'S DOCUMENTS AND THINGS (RFP NO. 1 AND ROG NO. 1)

### RFP NO. 1

All documents and things that are still in your possession that you received from CSPC Dophen or accessed, copied, or removed from CSPC Dophen computers or networks, including but not limited to all documents and things relating to CSPC Dophen's drug DP303.

### DR. HU'S SUPPLEMENTAL RESPONSE TO RFP NO. 1

Responding Party maintains the following objection and withdraws the remainder: This request is objectionable on the grounds that it calls for information that is protected by third party right of privacy.

Without waiving said objections, Responding Party responds as follows: Responding Party was in possession of a laptop computer and cell phone which were previously returned to Plaintiff. Since the occurrence of this production, Jaiying Fan, has claimed ownership of the laptop computer and the data contained therein and is disputing CSPC's ownership of the laptop computer. Responding party is unable to comply with this request any further because the only item relating to this request that remains in his possession, custody, or control contains the confidential information of third parties.

### ROG NO. 1

Identify with particularity all documents and things that are still in your possession that you received from CSPC Dophen or accessed, copied, or removed from CSPC Dophen computers or networks, including but not limited to all documents and things relating to CSPC Dophen's drug DP303.

### DR. HU'S SUPPLEMENTAL RESPONSE TO ROG NO. 1

Responding Party withdraws all previously made objections and responds as follows: Responding Party was in possession of a laptop computer and a cell phone, which he produced to Plaintiff. Since the occurrence of this production, Jaiying Fan, has claimed ownership of the laptop computer and the data contained therein and is disputing CSPC's ownership of the laptop computer. He is also in possession of a hard drive containing a back up of the laptop computer, which cannot be produced due to the fact it contains information belonging to a third party.

A.      **CSPC Dophen's Contentions**

RFP No. 1 and ROG No. 1 seek information and things that are in Dr. Hu's possession and that Dr. Hu accessed from CSPC Dophen computers or networks, which include for example, (1) storage devices and cloud drives that accessed the laptop before the mass deletion; (2) storage devices and cloud drives that accessed CSPC Dophen's desktop; and (3) documents in CSPC Dophen's email accounts.

> 1.      **Dr. Hu should be ordered to identify and produce for inspection all storage devices and cloud-based drives that accessed CSPC Dophen's laptop before the mass deletion.**

Dr. Hu should be ordered to identify and to produce for inspection all devices or drives that accessed CSPC Dophen's laptop prior to the mass deletion, including but not limited to, a purported backup disk identified by Dr. Hu and all the storage devices and cloud-based drives that accessed the laptop before the mass deletion.   Such devices and drives (and the information

stored thereon) are responsive to RFP No. 1 and ROG No. 1, which seek production of documents and things that "accessed, copied, or removed from CSPC Dophen computers or networks[.]"

CSPC Dophen's discovery is also warranted to the extent that any information that Dr. Hu has deleted from the laptop and cell phone may be recoverable from these storage devices.  The devices and drives that accessed the laptop computer prior to the mass deletion must be produced in their entirety.  This allows CSPC Dophen to forensically inspect these devices and drives to assess the scope and extent of Dr. Hu's spoliation of evidence.  (ECF No. 61-3 ¶¶ 28-29.)

Specifically, CSPC Dophen's forensic investigation reveals that a number of external storage devices accessed the laptop before the mass deletion.  For example, on December 4, 2017, a Hitachi Travelstar 100GB portable hard drive accessed the laptop just *several hours* before the mass deletion of information on the laptop using CCleaner.  (*Id*. ¶¶ 20-26.)  Below is a list of 12 external storage devices that accessed the laptop at various times before the mass deletion occurred:

| Name | Serial Number | Created (if available) | Last Written |
|------|---------------|------------------------|--------------|
| HTS54101 0G9AT00 USB Device | N/A | | 12/4/17 14:47 |
| USB DISK 2.0 USB Device | 07084AE4F61C7423 | 9/29/17 10:42 | 11/22/17 11:05 |
| USB DISK 2.0 USB Device | 07084AEF271C7464 | 11/22/17 11:03 | 11/22/17 11:03 |
| Generic Mass-Storage USB Device | N/A | 11/17/17 13:13 | 11/17/17 13:13 |
| Generic Flash Disk USB Device | 3DBD538C | 9/16/17 17:00 | 9/16/17 17:00 |
| Generic Flash Disk USB Device | FADB0336 | 9/14/17 20:01 | 9/14/17 20:01 |
| WD My Passport 0830 USB Device | 575836314543334155454B37 | | 8/30/17 10:33 |
| Generic Flash Disk USB Device | 933A13BB | 8/27/17 19:32 | 8/27/17 19:36 |
| TOSHIBA External USB 3.0 USB Device | 20130417010565F | | 8/27/17 14:31 |
| SanDisk Cruzer Glide | 2005405490118E936427 | | 8/23/17 8:27 |

| Name | Serial Number | Created (if available) | Last Written |
|------|---------------|------------------------|--------------|
| USB Device | | | |
| SanDisk Cruzer Glide USB Device | 4C532000050408111583 | 8/23/17 6:32 | 8/23/17 6:32 |
| SD Card | N/A | 8/15/17 18:20 | 8/15/17 18:20 |

(ECF No. 61-3 ¶ 21.)

In addition, CSPC Dophen's forensics investigation has revealed that certain cloud-based drives accessed the laptop shortly before the mass deletion. For example, a Microsoft OneDrive account accessed the laptop on December 1, 2017. (*Id.* ¶ 27.)

In response to these requests, Dr. Hu contends that he "is unable to comply" because his wife "has claimed ownership of the laptop computer" and the laptop and backup disk "contain[] the confidential information of third parties." However, Dr. Hu does not, and cannot deny that the information deleted by him from the laptop contained files relating to CSPC Dophen. (*See, e.g.*, ECF No. 61-3 ¶ 19.) Moreover, Dr. Hu's reliance on the right of privacy to withhold responsive information is misplaced. The right of privacy is not an absolute bar to discovery, and is subject to balancing the needs of the litigation with the sensitivity of the information sought. *See, e.g., EEOC v. Braun Elec. Co.*, No. 1:12-cv-01592 - LJO - JLT, 2014 U.S. Dist. LEXIS 9262, at *17-18 (E.D. Cal. Jan. 24, 2014) (overruling objection based on right of privacy because any concerns regarding privacy may be addressed by protective order); *Charles O. Bradley Tr. v. Zenith Capital L.L.C.*, No. C-04-2239 JSW (EMC), 2005 U.S. Dist. LEXIS 35562, at *5-8 (N.D. Cal. May 3, 2005).

Here, the needs of discovery (*e.g.*, assessing potentially severe wrongdoing by Dr. Hu and the extent of Dr. Hu's spoliation of evidence) significantly outweigh any alleged sensitivity of personal information. This is particularly true when the evidence demonstrates that the laptop contained files relating to CSPC Dophen. (ECF No. 61-3 ¶ 19.) Moreover, the alleged private information can be adequately addressed via the Protected Order entered in this case.

> **2.** **Dr. Hu should be ordered to identify and produce for inspection all storage devices and cloud drives that accessed the CSPC Dophen's desktop computer.**

1  CSPC Dophen's investigation has also revealed that Dr. Hu used a number of external

2  storage devices and cloud-based drives to copy and remove files from CSPC Dophen's desktop

3  computer without authorization. (10/25 Kunkel Decl.;[2] ECF No. 20-13.)  For example, Dr. Hu

4  removed a large number of files from CSPC Dophen's desktop computer to an external storage

5  device, on the evening of July 3, 2017.   (*Id.* ¶¶ 6-9, 11.)  CSPC Dophen's need to inspect the

6  external storage device is particularly warranted because Dr. Hu contends that he does not have in

7  his possession the files that he downloaded from CSPC Dophen's desktop computer on the

8  evening of July 3, 2017.  (Li Decl. Ex. E at 10-11.)  Moreover, Dr. Hu has copied and/or removed

9  over 8,000 files and folders from CSPC Dophen's desktop computer to his cloud-based drives,

10  including Google Drive and Microsoft OneDrive.  (10/25 Kunkel Decl. ¶ 10.)  Notably, Dr. Hu

11  concedes in his portion of the joint statement that he "signed up" the cloud drives to back up the

12  data in "his office desktop computer."  Dr. Hu is unable to refute any of the evidence

13  demonstrating that he copied and removed files from CSPC Dophen's desktop computer without

14  authorization.  His assertion that he simply does not "remember" is disingenuous.

15  The external storage drive and the cloud-based drives are clearly within the scope of RFP

16  No. 1 and ROG. No. 1 and should have been produced.  Dr. Hu's assertion that he no longer has

17  the access to the Google Drive and OneDrive because they were on CSPC Dophen's desktop is

18  plainly false. (Li Decl. Ex. M at 12-14.)  Dr. Hu can access his Google Drive and OneDrive from

19  virtually any other computer or devices without CSPC Dophen's control.  (*Id.*)  As it turns out,

20  Dr. Hu accessed his OneDrive from the laptop on December 1, 2017.  (1/18 Kunkel Decl. ¶ 27.)

21  This clearly contradicts Dr. Hu's assertion that he does not remember the account and password

22  information for the cloud drives.

23  Dr. Hu's contentions in the joint statement are baseless, irrelevant, and fail to justify his

24  refusal to produce the requested information and documents that are relevant in this case.  Dr. Hu

25  should be ordered to identify and to produce for inspection all devices and drives that accessed

26  _____

[2] "10/25 Kunkel Decl." refers to the attached Declaration of Michael Kunkel dated October 25,

27  2018.

28

1  CSPC Dophen's desktop computer immediately, including but not limited to, the above-identified

2  external storage device, the Google Drive, and the Microsoft One Drive.  These devices and

3  drives should be produced for forensic inspection in their entirety.

### 3. Dr. Hu should be ordered to produce all documents contained in the dophenbiomed.com and dophenbiomed@gmail.com email accounts.

Dr. Hu has currently in control of CSPC Dophen's email accounts, including the

dophenbiomed.com and dophenbiomed@gmail.com email accounts.  (ECF No. 20-10, ¶ 5; Li

Decl. Ex. Q at 8-9.)  Contrary to Dr. Hu's assertion, these email accounts were used by CSPC

Dophen's employees during their employment and CSPC Dophen paid monthly hosting fees for

its dophenbiomed.com domain and email accounts.  (ECF No. 20-10, ¶ 5; ECF No. 20-11; Li

Decl. Ex. Q at 8-9.)  When Dr. Hu was fired in July 2017, he blocked CSPC Dophen's access to

these email accounts by changing the passwords without CSPC Dophen's knowledge or

authorization.  (*See id.*; ECF No. 20 at 10-11.)  Dr. Hu is currently in control of CSPC Dophen's

email accounts, including the dophenbiomed.com and dophenbiomed@gmail.com email

accounts.  (ECF No. 20-10, ¶ 5; Li Decl. Ex. Q at 8-9.)

The documents and communications contained in the dophenbiomed.com and

dophenbiomed@gmail.com email accounts are responsive to RFP No. 1, which seeks "[a]ll

documents and things that are still in your possession that you received from CSPC Dophen[.]"

Dr. Hu's argument that he does not need to produce information relating to these email accounts

because he allegedly owns the email accounts is baseless and misplaced.  Even assuming

*arguendo* that these email accounts were "registered by [Dr. Hu] for Dophen Biomed Inc.," the

documents in these email accounts are clearly relevant to CSPC Dophen's claims.  (*See, e.g.*, ECF

No. 14 ¶¶ 10-15 (complaint alleging that Dr. Hu formed a secret entity "Dophen Biomed, Inc."

using CSPC Dophen's address and d/b/a name to engage in numerous unauthorized and improper

activities).)  Accordingly, Dr. Hu should be ordered to produce all documents from these email

accounts immediately.[3]

---

[3] Including admin@dophenbiomed.com, info@dophenbiomed.com,
careers@dophenbiomed.com, ashley@dophenbiomed.com, lfeng@dophenbiomed.com,

## B.      Dr. Hu's Contentions

As to Point 1, I already mentioned it was my bad memory thinking CSPC-Dophen either purchased the computer or reimbursed the computer.  Facts speek louder. If CSPC-Dophen could provide evidence that it reimbursed the computer and it paid my wife for her design, then we further talk about the ownership of the computer and its contents.

CSPC-Dophen and its counsel are on purpose misleading the court about the two computers, one is the Dell computer with a unique Dell tag "2GQXRQ1" , which was bought on Oct 13, 2011 by me, more than 2 weeks before I joined CSPC-Dophen; and the second computer was my office computer at CSPC-Dophen, which I had no access since July 4, 2017. They mix things up and just use a vulgar term "computer" .

In CSPC-Dophen's first complaint, CSPC-Dophen first alleged me taking flash drive or hard disk connected to the router. CSPC-Dophen and its lawyers have no common decency. They even coached their employees to lie (that I stole hard drive and flush drive) in order for these employees to keep their job (as I found out from witnesses). When they found the flash-drive was still on the router in CSPC-Dophen's possession, it changed its allegation to "stealing data at midnight on July 4, 2017". I explained that I met CSPC representatives on the evening of July 4, 2017 until 8:00pm in Bay Area. It took me about an hour to come back. Then, I went out with the kids for fireworks. When I prepared for the business trip (July 5) to China at midnight, I realized that my presentation was still on my office computer. So, I went to my office to email the slides. CSPC-Dophen even hired forensic expert to trace what I downloaded from my office computer. CSPC-Dophen could not find any evidence that I transferred any data at midnight on July 4, then, it changed the date of alleged offense "used a number of external storage devices and cloud-based drives to copy and remove files from CSPC Dophen's desktop computer without authorization." from July 4 to July 3 or before which were my normal working days. It deliberately hid the fact that this desktop computer was my office computer and created a delusion that I secretively went

lallen@dophenbiomed.com, lisha@dophenbiomed.com, rubin@dophenbiomed.com, yuxishan@dophenbiomed.com, grants@dophenbiomed.com, and sean@dophenbiomed.com.

1   to the computer to steal data.

2       I was sitting in front my office desktop computer every working day. There was no IT guy

3   at CSPC-Dophen. I built and maintained the network and backed up the data every week. There

4   was an automated schedule to backup all data to my desktop computer and the cloud drives. All

5   cloud drives were free services signed up by me. Sometime when the back-up failed due to

6   network interruption, I took the USB drive on the route to my desktop computer directly for

7   backup. I kept all password saved to the computer. I do not remember all the accounts and

8   password as my major work was research not computer/network maintenance. CSPC-Dophen

9   unduly asked me to recall every working day details and remember every accounts/passwords

10  which were save to the desktop computer (which has been in CSPC-Dophen's possession since

11  July 5, 2017) is not justified. CSPC-Dophen's accusation "copy and remove files without

12  authorization "form my own office computer is ludicrous. I was in charge of everything. Most of

13  files on the network drive were from my personal collection over the last 15 years. I will take

14  action latter to remove all of them instead of letting CSPC-Dophen uses them for free. If Mr.

15  Wilson and Ms. Li could remember which pants they wore on July 3 and every other day before

16  July 3, 2017, ask me again which flash drive I used.

17      CSPC-Dophen's official email account is Dophenbiomed@mail.eCSPC.com and my

18  official email was Sean.Hu@mail.eCSPC.COM. Dophenbiomed.com was registered by me using

19  my own money for personal use. Dophenbiomed@gmail.com was a free email registered by me

20  personally too (Exhibit 5). On July 5, 2017 CSPC-Dophen blocked my accounts at

21  mail.eCSPC.com and illegally took control of DophenBiomed.com and

22  Dophenbiomed@Gamil.com. It went as far as deactivating my personal cell phone number 530

23  220 5660. As Dophenbiomed.com, Dophenbiomed@Gamil.com, and 530 220 5660 number were

24  my personal accounts, I was able to call Google and T-Mobile to get them back on July 15, 2017

25  after I came back from an oversea trip. CSPC-Dophen tried again to contact Google and T-

26  Mobile to get access, it was refused by both Google and T-Mobile. As to this writing, CSPC-

27  Dophen not only blocked my access to Sean.Hu@mail.eCSPC.com, but also refused to answer

28  interrogatory questions and production request regarding evidence in this email account for joint-

venture and CSPC's acknowledge of Dophen Biomed Inc to get external funding. Simply put, if

Dophenbiomed.com domain, Dophenbiomed@gmail.com and phone number 530 220 5660 were

owned by CSPC-Dophen, CSPC-Dophen would have got them back through Google and T-

Mobile. These accounts/domains were registered by me for personal use, and contained nothing

belongs CSPC-Dophen.

**III.    DISCOVERY RELATING TO EMAIL ACCOUNTS (RFP NO. 5)**

> **RFP NO. 5**
>
> All documents or communications referring or relating to CSPC
> Dophen email accounts (dophenbiomed.com or others), including
> but not limited to new or changed passwords or login information.

> **DR. HU'S SUPPLEMENTAL RESPONSE TO RFP NO. 5**
>
> Responding Party maintains the following objections and
> withdraws the remainder: The request calls for information
> protected by the attorney client privilege and it is vague and
> ambiguous as to time and the terms "referring or relating to," and
> "CSPC Dophen email accounts". Without waiving said objections,
> Responding Party agrees to comply with this request by producing
> HU000001-HU000262.

**A.    CSPC Dophen's Contentions**

RFP No. 5 seeks information relating to CSPC Dophen's email accounts, including the

dophenbiomed.com and dophenbiomed@gmail.com email accounts.  Dr. Hu's document

production HU000001-HU000262 does not contain "the new or changed passwords or login

information" as requested by RFP No. 5.  Notably, the Court previously ordered Dr. Hu to

"[i]dentify the password or login information for any CSPC Dophen email accounts in your

possession" on November 13 (ECF No. 33), but Dr. Hu has failed to provide that information for

the dophenbiomed.com and dophenbiomed@gmail.com email accounts.

As discussed above, Dr. Hu's argument that he does not need to produce information

relating to these email accounts because he allegedly owns these email accounts is unavailing.

Moreover, in light of the spoliation of evidence that has already occurred, there is a significant

risk of further spoliation of evidence in these email accounts, if not already occurred.

Accordingly, Dr. Hu should be ordered to produce all documents or communications referring or

relating to the dophenbiomed.com and dophenbiomed@gmail.com email accounts immediately,

including but not limited to new or changed passwords or login information.

**B.    Dr. Hu's Contentions**

Court's order was for CSPC-Dophen's email accounts. CSPC-Dophen has its email

accounts hosted on mail.eCSPC.COM and Dophen.COM. Dophenbiomed.com and

Dophenbiomed@gamil.com were created by me for personal endeavors.

**IV.    DISCOVERY CONCERNING CSPC DOPHEN'S FUNDS (RFP NO. 6 AND ROG NO. 5)**

**RFP NO. 6**

All documents or communications referring or relating to any bank
account you maintain access to which contains funds belonging to
CSPC Dophen, including an accounting of the quantity and source
of all funds contained therein.

**DR. HU'S SUPPLEMENTAL RESPONSE TO RFP NO. 6**

Responding Party is not able to comply with this request because
the items requested never existed or are not in possession, custody,
or control of Responding Party.

**ROG NO. 5**

Identify the contents of any bank account you maintain access to
which contains funds belonging to CSPC Dophen, listing the source
and quantity of all funds.

**DR. HU'S SUPPLEMENTAL RESPONSE TO RFP NO. 5**

Responding Party withdraws all previously made objections and
responds as follows: None.

**A.    CSPC Dophen's Contentions**

RFP No. 6 and ROG. No. 5 both seek information concerning CSPC Dophen's funds

misappropriated by Dr. Hu.  Dr. Hu established a separate bank account for Dophen Biomed, Inc.

and had deposited at least the following funds belonging to CSPC Dophen into his bank account:

- €50,000 of sales revenues of CSPC Dophen's product Recombinant Microbial

  Transglutaminase (mTGase) from Heidelberg Pharma GmbH (Smith Decl.[4] Ex. 1

---

[4] "Smith Decl." refers to the attached Declaration of Ashley Smith dated June 7, 2018.

1    (Dophen Biomed, Inc.'s bank statements showing a deposit of $53,740.55 from

2    Heidelberg Pharma GmbH)); and

3    • $32,123.88 of tax return refund to Conjupro Biotherapeutics, Inc., CSPC Dophen's

4    sister company (*id*. (Dophen Biomed, Inc.'s bank statements showing a deposit of

5    $32,123.88));

6    • $4,500 rental payment from leasing CSPC Dophen's lab facility to other

7    companies that Dr. Hu deposited into his account (*id*. (Dophen Biomed, Inc.'s

8    bank statements showing six deposits of $750—total of $4,500)).

9    (Li Decl. Ex. Q at 8; ECF No. 20-10, ¶ 6.)

10       Dr. Hu's responses to these requests are evasive.  For example, Dr. Hu contends that he

11   "is not able to comply with this request because the items requested never existed or are not in

12   possession, custody, or control of Responding Party."  (Li Decl. Ex. E at 9.)  Dr. Hu does not

13   explain how he does not have possession or control over his own bank account or why the

14   requested information "never existed."  (*Id*.)  Dr. Hu's contentions in the joint statement are

15   baseless and irrelevant.  To the extent that Dr. Hu disputes the ownership of these funds or argues

16   that he did not personally deposit these funds, they are not grounds for him to refuse to produce

17   relevant documents and information in discovery.  (ECF No. 14 ¶¶ 13, 22, 46, 60 (complaint

18   pleading causes of action based on the allegation that that Dr. Hu established a separate bank

19   account and deposited into that account CSPC Dophen's funds).)

20       Accordingly, Dr. Hu should be ordered to produce relevant documents and information

21   relating to the above-identified funds in response to CSPC Dophen's RFP No. 6 and ROG. No. 5.

22       **B.    Dr. Hu's Contentions**

23       CSPC-Dophen was join-owned by me and CSPC.  CSPC tricked me not to sign a written

24   agreement but to work as an employee. It offered me CSPC stock option to purchase in exchange

25   to sign IP agreement. Then it claimed that CSPC has nothing to do with CSPC-Dophen to justify

26   its illegal holding my stock shares and dividend as today. CSPC refused to pay the contractors

27   who did lab contraction in 2013. CSPC threatened to close CSPC-Dophen many times between

28   2012 and 2014. As CSPC-Dophen was registered with CSPC as the sole owner, I had requested

1   CSPC to change the ownership many times to reflect the fair share of employees and me and to
2   give us the ability to raise external funding. CSPC-Dophen declined.  Dophen Biomed Inc was
3   created with CSPC's approval to attract external funding. CSPC had been keeping telling me that
4   I would own a piece of CSPC-Dophen before the patent was still under Dophen Biomed. As soon
5   as CSPC got my patent and project, it claimed 100% ownership, kicked me out and illegally took
6   my stock shares, and dressed it up as a victim.  This greedy and criminal Chinese company is
7   repeating the same trick again somewhere else in US.

8   • The €50,000 option fee was for the deal between Heidelberg Pharm and Dophen
9     Biomed Inc, nothing to do with CSPC. It was used to fund employee retention
10    salary increase, including Ashley Smith, Lisha Allen, and Yubin Yang, who are
11    still with CSPC. CSPC did not want to pay the raise.

12  • The late tax return penalty was assessed by IRS and I wrote to IRS to get it back.
13    CSPC financial department managers were afraid punishment from Mr. Cai
14    (CSPC's Chairman) and directed me to hide it. I did not deposit the money but the
15    current CSPC employee, Ashley Smith, did. CSPC needs to show the court the
16    evidence that I deposited the money to my personal account.

17  • Originally, I directed Ashley Smith, who is still with CSPC, to cash them out to
18    pay for her care of animals intended for CSPC-Dophen's use as well as petty cash
19    to pay CSPC's trainees' food and miscellaneous expenses. First she deposited to
20    her personal account. Then, she deposited a few checks to Dophen Biomed Inc
21    account after she opened the account to receive NIH funding. She took the cash
22    out from Dophen Biomed Inc bank account to buy gift cards for employees during
23    Christmas. Ashley Smith had been the sole person who had access and control of
24    Dophen Biomed Inc bank account. CSPC should provide evidence to the court to
25    show if I deposited the money to my personal account.

26    Both CSPC-Dophen and its counsels are shameless liars! They refused to return the stock
27  shares I purchase nor to pay the dividends, which totals more than $5 million. CSPC first denied
28  there was any stock purchase. I showed them its chief financial officer's acknowledgement of my

1  purchase of the shares. Then, it claimed that CSPC was not CSPC-Dophen. And it fabricated

2  accusations about me stealing their money without providing any evidence.

3  **V.      DR. HU AND HIS FORMER COUNSEL SHOULD BE ORDERED TO
4          REIMBURSE CSPC DOPHEN REASONABLE COSTS AND ATTORNEYS'
          FEES.**

5          **A.      CSPC Dophen's Contentions**

6          Dr. Hu and his former counsel should be ordered to pay CSPC Dophen reasonable costs

7  and attorneys' fees, including the costs and fees associated with (1) CSPC Dophen's Motion to

8  Compel; (2) CSPC Dophen's forensics investigation of the laptop computer and cell phone and its

9  attempt to recover the information that Dr. Hu has deleted; and (3) CSPC Dophen's taking of

10  deposition of Dr. Hu associated to mitigate the prejudice suffered as a direct consequence of Dr.

11  Hu's discovery abuse.

12          CSPC Dophen will provide an accounting of the costs and fees at the Court's direction

13  and reserves its right to seek additional sanctions against Dr. Hu and his former counsel.

14          **1.      CSPC Dophen is entitled to attorneys' fees and costs under Rule 37(e).**

15          The Court is empowered to order monetary sanctions under Rule 37(e)(1) for failure to

16  preserve evidence.  Rule 37(e) lists three requirements: (1) the "electronically stored information"

17  at issue "should have been preserved in the anticipation or conduct of litigation"; (2) that

18  information "is lost because a party failed to take reasonable steps to preserve it"; and (3) "it

19  cannot be restored or replaced through additional discovery."  Here, CSPC Dophen is entitled to

20  attorneys' fees and costs under Rule 37.  *See, e.g., Blumenthal Distrib., Inc. v. Herman Miller,*

21  *Inc.*, No. ED CV 14-1926-JAK (SPx), 2016 U.S. Dist. LEXIS 184932 , at *79-81 (C.D. Cal. July

22  12, 2016) (granting attorney's fees and expenses related to forensic analysis and depositions

23  conducted due to plaintiff's failure to preserve evidence under Rule 37(e)(1)); *Matthew Enter. v.*

24  *Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2016 U.S. Dist. LEXIS 67561, at *8-16  (N.D. Cal.

25  May 23, 2016) (granting reasonable attorney's fees for bringing motion for spoliation where

26  defendant failed to preserve evidence under Rule 37(e)(1)).

27          First, there is no question that Dr. Hu and his former counsel had a duty to preserve the

28  information on the laptop and cell phone.  The instant case was filed on September 11, 2017.

1    (ECF No. 1.)  Dr. Hu himself, in a verified response dated November 30, 2017, identified the

2    laptop and cellphone as responsive to CSPC Dophen's discovery requests served on October 31,

3    2017.  (Li Decl. Ex. C at 3.)  Moreover, CSPC Dophen's forensic investigation reveals that the

4    information deleted by Dr. Hu included files relating to CSPC Dophen.  (*See* ECF No. 61-3 ¶ 19.)

5    Dr. Hu's deletion of information, in the midst of litigation and just two days before producing the

6    laptop and cellphone, clearly breached that duty.  The information deleted by Dr. Hu is presumed

7    to "go[] to the merits of the case" and to be "adverse to the party that destroyed it."  *Dong Ah*

8    *Tire*, 2009 U.S. Dist. LEXIS 62668, at *29.

9        Second, the information is lost due to Dr. Hu's and his former counsel's failure to take

10   reasonable steps to preserve it.  The use of CCleaner to purge thousands of files on the laptop just

11   two days before its production, eliminating all traces of the files and their metadata, then deleting

12   the very application used to purge the files, coupled with the factory reset of the cell phone,

13   evidence a deliberate attempt by Dr. Hu to destroy evidence and to conceal the destruction.  (ECF

14   No. 61-3 ¶¶ 12, 30-32.)  Dr. Hu and his former counsel have failed to provide any explanation of

15   the mass deletion (which included deletion of files relating to CSPC Dophen), or their efforts, if

16   any, to preserve evidence and prevent spoliation.  Nor can they confirm that they are taking all

17   necessary steps to preserve all remaining evidence, despite CSPC Dophen's repeated requests.

18   (*See* Li Decl. Exs. K-P.)  Notably, Dr. Hu's former counsel allowed Dr. Hu to keep the laptop and

19   cell phone long after Dr. Hu's and his former counsel's duty to preserve evidence arose.

20       Third, the lost information cannot be recovered through additional discovery.  Dr. Hu's

21   former counsel has stated that they are not aware of any backup of the cell phone.  In addition,

22   due to the effect of CCleaner and the factory reset of the cellphone, it is impossible fully ascertain

23   the scope of the deleted information.  Although Dr. Hu has indicated that there is a purported

24   "backup" disk for the laptop, Dr. Hu's former counsel cannot confirm when the alleged "backup"

25   took place.  Moreover, Dr. Hu has refused to produce the purported "backup" disk on the basis

26   that it does not contain information relating to this lawsuit, suggesting that any CSPC Dophen

27   related files may not be recovered from that disk.

28       Finally, Dr. Hu's deletion of the laptop and cell phone data has prejudiced CSPC

Dophen's ability to present a full case, particularly when the deleted information may support CSPC Dophen's claim for trade secret misappropriation and other claims against Dr. Hu.

**2.      CSPC Dophen is entitled to attorneys' fees and costs under Rule 37(a)(5)(A).**

Rule 37(a)(5)(A) provides that a party who prevails on a motion to compel is entitled to its expenses and attorney's fees, unless the losing party was substantially justified in opposing the motion (or other circumstances make such an award unjust).

Here, Dr. Hu is not justified in opposing CSPC Dophen's Motion to Compel.  Dr. Hu's deletion of information is motivated by a highly culpable desire to deliberately block CSPC Dophen from obtaining relevant information.  Unable to address CSPC Dophen's motion on the merits, Dr. Hu's portion of the joint statement contains false, baseless, malicious and personal attacks against CSPC Limited, CSPC Dophen and its counsel.  CSPC Dophen is entitled to recover its expenses and attorney's fees from Dr. Hu and his former counsel under Rule 37(a)(5)(A) should it prevail on its Motion to Compel.

**3.      CSPC Dophen is entitled to attorneys' fees and costs under the Court's inherent power.**

The Court is empowered to order monetary sanctions under its inherent powers for failure to preserve evidence.  *See, e.g., Kopitar v. Nationwide Mut. Ins. Co.*, 266 F.R.D. 493, 501 (E.D. Cal. 2010) (imposing monetary sanctions for failing to preserve evidence); *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 264 F.R.D. 517, 530 (N.D. Cal. 2009) (awarding attorneys' fees and costs to defendants "for pursuing the evidence of spoliation of Hamilton's notebooks and for bringing this part of the sanctions motion.").

Here, Dr. Hu's deliberate attempt to delete information from the laptop and cell phone and to conceal the deletion amount to bad faith, and thus the award of the above attorneys' fees and costs against Dr. Hu and his former counsel is available under the court's inherent powers.  *See, e.g., Blumenthal Distrib.*, 2016 U.S. Dist. LEXIS 184932 , at *80-83; *see also Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001) (reasoning "willful actions, including recklessness when combined with an additional factor" can be "tantamount to bad faith" and justify sanctions under the court's inherent powers).

### B.     Dr. Hu's Contentions

My wife and I deleted the contents of her computer for privacy. CSPC has no ownership of the computer nor the cell phone, nor the internet domain (Dophenbiomed.com) and Dophenbiomed@gmail.com no matter how CSPC-Dophen twisted the facts. My former lawyer was naive to advise me to give both the computer and cellphone to CSPC-Dophen. Apparently, my former counsel's intent to end the litigation was not the intention of CSPC-Dophen. CSPC-Dophen wanted to settle for lesser than 1/3 of the money it owes me. It fabricated the accusations to drain me financially through the lengthy court process. CSPC-Dophen representative boasted that CSPC had the strong financial muscle to destroy me and my career, and would drag on the case until I agreed to settle for less. It abused the discovery process to get access to private properties and personal confidential information. That is not going to happen. I am a reputable and hardworking scientist, who raised his children to attend the best film school (NYU), the best medical school (John Hopkins) and the best business school (Berkley). My son told me "daddy, defend yourself and get the criminal Chinese company exposed. You are better than those no-name lawyers".  On the other hand, Mr Cai, Chairman of CSPC, and CSPC-Dophen, mustered his fortune through lies, fraud, and threats. CSPC was a state-owned enterprise. Under Mr. Cai, it was a money-losing business before privatization. Once it was privatized and Mr. Cai got it for free, it became money-printing machine. Mr. Cai devised a scheme to deprive all other employees' shares; he announced fake sales of money-losing division to inflate stock price; he cheated Chinese patients with fake clinical trial results of its bestselling drug, NBP; to further boost NBP sales in China, he faked clinical trials in US; to evade taxes, he paid employee salary via falsified personal bank accounts; to be ready to leave China, he secretly immigrated to Hong Kong while still serves as a member of People's Congress representing HeBei Province; he came to US to steal my technology and tried to avoid any consequence by created multiple entities. It was a willful action of CSPC to deceive me from the very beginning to end. Now that it robbed me my patent, my project, and my 2 million shares of CSPC stock I purchased, CSPC and its shameful counsels asked me to pay for its sins. As I noted in my previous motion to disqualify Morrison Foerster lawyers (to be filed again soon), these bloodsucker lawyers created the suite themselves

by passing privileged information to CSPC when it was representing Dophen Biomed Inc. They directly violated L.R. 180e. Morrison Foerster's lawyers can continue to dip their dirty hands into CSPC's deep pocket. I would not spare a penny for the dishonest.

CSPC is among the gang of Chinese companies who cheat, lie and steal.  It uses money and "joint-venture" to allure unguarded scientists like me. Although is not worth to spend more time on such a pitiable lowlife, Mr Cai and CSPC, I would want to expose the true color of CSPC to the court in order to warn others from falling victim to CSPC again. With confidence in our court and justice system, I stand up for myself in front the court to fight against a few rats from China as long as needed. I will see how blood thirsty lawyers from Morrison Foerster suck these rats dry.

Dated: June 8, 2018

MORRISON & FOERSTER LLP

By:   _/s/ Yue Li_
        YUE LI

Attorneys for Plaintiff
CSPC DOPHEN CORPORATION

Dated: June 8, 2018

By:   _/s/  Sean Hu_
        Zhixiang (Sean) Hu

_Pro Se_

1

## ECF ATTESTATION

2     In accordance with Civil Local Rule 131(e), I attest that concurrence in the filing of this

3 document has been obtained from each of the other signatories.

4

5 Dated: June 8, 2018

6                                    By:  */s/ Yue Li*
                                          YUE LI
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28