| | |
|---|---|
| CSPC DOPHEN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ZHIXIANG HU,<br><br>Defendant. | No. 2:17-cv-1895 MCE DB PS<br><br>ORDER |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Defendant and counterclaimant, Dr. Zhixiang Hu, Ph.D., is proceeding in this action pro se. (ECF No. 68.) Accordingly, this action has been referred to the undersigned pursuant to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). Pending before the undersigned are defendant's motion to disqualify plaintiff's counsel, plaintiff's partial motion to dismiss and strike defendant's amended counterclaim, and motions to dismiss for lack of personal jurisdiction and insufficient service of process filed by counter-defendants CSPC Pharmaceutical Group Limited, Yingui Li, Jinxu Wang, Jumin Sun, and Dongchen Cai.

For the reasons explained below, defendant's motion to disqualify is denied, the motions to dismiss filed by plaintiff and counter-defendants are granted, and defendant is granted leave to file a second amended counterclaim and effect proper service.

////

////

1

# BACKGROUND

Plaintiff CSPC Dophen Corporation ("CSPC Dophen") commenced this action on September 11, 2017. (ECF No. 1.) Plaintiff filed an amended complaint on October 13, 2017. (ECF No. 14.) According to the amended complaint, plaintiff is a pharmaceutical and development company based in Sacramento, California. (Am. Compl. (ECF No. 14) at 2.[1]) Plaintiff hired defendant, Dr. Sean Hu, in October of 2011, as Director of CSPC Dophen's Research Laboratory. (Id. at 3.)

The amended complaint alleges that on April 24, 2014, defendant incorporated a competing entity named Dophen Biomed, Inc., with the same address as CSPC Dophen, and took trade secrets and personal property belonging to plaintiff. (Id. at 4.) The amended complaint alleges causes of action for breach of contract, breach of the duty of loyalty, violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832(a)(1), violation of the Lanham Act, 15 U.S.C. § 1125(a), conversion, violation of the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502, and unfair competition. (Id. at 6-13.) On November 1, 2017, defendant filed an answer to the amended complaint, along with counterclaims.[2] (ECF No. 22.) Defendant filed an amended counterclaim on December 6, 2017. (ECF No. 39.)

On May 30, 2018, plaintiff filed a motion to dismiss and a motion to strike defendant's amended counterclaim. (ECF No. 70.) Defendant filed an opposition on June 14, 2018. (ECF No. 74.) On June 22, 2018, plaintiff filed a reply. (ECF No. 79.) On June 26, 2018, the undersigned took the motion to dismiss under submission. (ECF No. 81.)

On July 13, 2018, defendant filed a motion to disqualify plaintiff's counsel. (ECF No. 84.) Plaintiff filed an opposition on July 27, 2018. (ECF No. 87.) Defendant filed a reply on August 3, 2018. (ECF No. 91.) On August 6, 2018, the undersigned took the motion to disqualify under submission. (ECF No. 92.)

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[2] At that time, defendant was proceeding through counsel. On May 29, 2018, a motion to withdraw as defendant's counsel was granted and the matter was referred to the undersigned pursuant to Local Rule 302(c)(21). (ECF No. 68.)

On August 13, 2018, counter-defendant CSPC Pharmaceutical Group Limited filed a motion to dismiss Dr. Hu's counterclaims for lack of personal jurisdiction and insufficient service of process. (ECF No. 95.) Counter-defendants Yingui Li, Jinxu Wang, Jumin Sun, and Dongchen Cai filed the same motion on August 16, 2018. (ECF No. 96.) Counterclaimant Dr. Hu filed oppositions on August 31, 2018. (ECF Nos. 97 & 99.) Counter-defendants filed replies on September 7, 2018. (ECF Nos. 100 & 101.) On September 10, 2018, the undersigned took counter-defendants' motions to dismiss under submission. (ECF No. 102.)

ANALYSIS

**I.    Defendant's Motion to Disqualify Plaintiff's Counsel**

Defendant's motion argues that the law firm representing plaintiff—Morrison & Foerster LLP—previously represented plaintiff, "obtained confidential information" as a result of that representation, and now "stands in the middle of the dispute" between the firm's current client and a former client. (Def.'s Mot. Disq. (ECF No. 84-1) at 2.) Defendant contends that attorneys with Morrison & Foerster "have become witnesses in this current litigation[.]" (Id.) Accordingly, defendant's motion seeks to have "Morrison [&] Foerster . . . removed from this litigation in order to protect the confidential and privileged information with their client, Dr. Hu and Dophen Biomed Inc." (Id.)

The court applies "state law in determining matters of disqualification[.]" In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000). "The authority of a trial court to disqualify an attorney derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers." City & Cnty. of S.F. v. Cobra Solutions, Inc., 38 Cal.4th 839, 846 (Cal. 2006) (citation and quotations omitted). However, "disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir. 1982). Nevertheless, "the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co., 72 Cal.App.4th 1422, 1428 (1999).

////

Defendant's motion relies on California Rule of Professional Conduct 3–310(E), which provides that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." In this regard, "[w]here an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation." People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., 20 Cal.4th 1135, 1146 (Cal. 1999); see also Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980) ("The relevant test for disqualification is whether the former representation is 'substantially related' to the current representation.").

Here, attorneys with Morrison & Foerster never represented the defendant, thus the defendant is not a former client of Morrison & Foerster. Defendant's motion argues that "[o]n March 29, 2013, Morrison Foerster sent [defendant] Dr. Hu an engagement letter outlining the terms of Morrison Foerster's performance of legal services on behalf of Dophen Biomedical and [defendant] Dr. Hu." (Def.'s Mot. Disq. (ECF No. 84-1) at 4.) The March 29, 2013 engagement letter, however, states only that "Morrision & Foerster LLP . . . has been engaged to represent Dophen Biomedical[.]"[3] (Def.'s Mot. Disq., Ex. 10 (ECF No. 84-12) at 2.) The letter does not state that Morrison & Foerster would represent the defendant, Dr. Hu.

Although Dr. Hu signed the engagement letter, he did so as "Director" so that the engagement could be "APPROVED AND AGREED TO" by "DOPHEN BIOMEDICAL." (Id. at 5.) And, the engagement letter explicitly states that Morrison & Foerster's engagement was "solely with the individuals specifically identified as clients in [the] letter" and that Morrison & Foerster did "not represent any other individuals or entities not named as clients" in the letter. (Id. at 4.) The only client identified in the letter is Dophen Biomedical. (Id. at 2.)

////

---

[3] Defendant's business entity "Dophen Biomed Inc.," was not created until April 21, 2014. (Def.'s Mot. Disq. (ECF No. 84-1) at 5; Xiong Decl. (ECF No. 84-37) at 2.)

4

Moreover, the scope of Morrison & Foerster's engagement concerned only "advice on patent prosecution." (Id.) It is not clear that patent prosecution is substantially related to the claims at issue here, i.e., breach of contract, trade secrets, unfair competition, etc. See Jessen v. Hartford Casualty Ins. Co., 111 Cal.App.4th 698, 713 (2003) ("successive representations will be 'substantially related' when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues").

Accordingly, for the reasons stated above, defendant's motion to disqualify plaintiff's counsel is denied.

## II. Plaintiff's Partial Motion to Dismiss

As noted above, on December 6, 2017, defendant filed an amended counterclaim. (ECF No. 39.) The amended counterclaim contains eleven discrete counterclaims. (Id. at 10-22.) Plaintiff's motion seeks dismissals of six of those amended counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"). (Pl.'s MTD (ECF No. 70) at 2.) Plaintiff's motion also seeks to strike the amended counterclaim's request for punitive damages with respect to some of those counterclaims pursuant to Rule 12(f). (Id. at 8.)

### A. Standards

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "The rule applies equally to a counterclaim." Hana Financial, Inc. v. Hana Bank, 500 F.Supp.2d 1228, 1232 (C.D. Cal. 2007). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A party is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In determining whether a counterclaim states a claim on which relief may be granted, the court accepts as true the allegations in the counterclaim and construes the allegations in the light most favorable to the nonmoving party. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In general, pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the nonmoving party "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the counterclaim, documents that are not physically attached if their authenticity is not contested and the defendant's counterclaim necessarily relies on them, and matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

A motion to strike pursuant to Rule 12(f) allows a court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" Whittlestone, Inc. v. Handi-Craft, Co., 618 F.3d 970, 973 (9th Cir. 2010) (quoting Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)), *rev'd on other grounds by* Fogerty

////

6

v. Fantasy, Inc., 510 U.S. 517, 114 (1994); see also Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

A motion to strike is well-taken when "it is clear that the matter to be stricken could have no possible bearing on the subject matter of litigation." LeDuc v. Kentucky Central Life Ins. Co., 814 F.Supp. 820, 830 (N.D. Cal. 1992). Impertinent allegations are those that are not responsive or relevant to issues involved in the action and which could not be admitted as evidence in the litigation. Fantasy, Inc., 984 F.2d at 1527. "Scandalous" within the meaning of Rule 12(f) includes allegations that cast a cruelly derogatory light on a party or other person. Talbot v. Robert Mathews Distributing Co., 961 F.2d 654, 665 (7th Cir. 1992).

Ultimately, whether to grant a motion to strike applying these standards lies within the sound discretion of the district court. Fantasy, Inc., 984 F.2d at 1527; see also California Dept. of Toxic Substances Control v. Alco Pacific, Inc., 217 F.Supp.2d 1028, 1032-33 (C.D. Cal. 2002).[4]

### B. Third Amended Counterclaim—Defamation

Plaintiff seeks dismissal of defendant's third amended counterclaim for defamation on the grounds that defendant "has failed to plead nearly all the required elements[.]" (Pl.'s MTD (ECF No. 70) at 21.) In order to allege a prima facie claim for defamation, a party must allege facts that establish the existence of "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." Taus v. Loftus, 40 Cal.4th 683, 720 (Cal. 2007). Publication is communication of the allegedly defamatory statement "to a third person who understands its defamatory meaning as applied to the [defamed party]." Shively v. Bozanich, 31 Cal.4th 1230, 1242 (Cal. 2003).

Here, defendant's counterclaim alleges simply that "at various times" plaintiff, plaintiff's employees, and plaintiff's representatives defamed defendant "by publishing statements concerning [defendant's] alleged theft of CSPC funds and assets, among other false and defamatory statements." (Def.'s Am. CC (ECF No. 39) at 11-12.) Defendant's counterclaim

---

[4] Rule 12(f) motions are generally viewed with disfavor and not ordinarily granted. Bureerong v. Uvawas, 922 F.Supp. 1450, 1478 (C.D. Cal. 1996). A motion to strike should therefore not be granted unless it is absolutely clear that the matter to be stricken could have no possible bearing on the litigation. Lilley v. Charren, 936 F.Supp. 708, 713 (N.D. Cal. 1996).

lacks any further specificity. Thus, it is entirely unclear: (1) what allegedly defamatory statement was made; (2) when it was made; (3) to whom it was made; and (4) that the statement had a natural tendency to injure of cause special damages.

Accordingly, plaintiff's motion to dismiss is granted as to this counterclaim. For the reasons explained below, defendant is granted leave to amend this counterclaim.

### C. Fifth Amended Counterclaim—Conversion—and Eleventh Amended Counterclaim—Money Had and Received

Plaintiff also seeks dismissal of defendant's fifth amended counterclaim, for conversion, and eleventh amended counterclaim, for money had and received. Plaintiff argues that these claims "are based on the same facts" and "cannot state a cause of action against CSPC Dophen, as opposed to [counter-defendant] CSPC Limited." (Pl.'s MTD (ECF No. 70) at 11-12.)

"To state a [counterclaim] for conversion under California law, a [defendant] must establish: (1) the [defendant's] ownership or right to possession of a certain piece of property; (2) the [plaintiff's] conversion of the property by a wrongful act or disposition of property rights; and (3) damages." Firoozye v. Earthlink Network, 153 F.Supp.2d 1115, 1129 (N.D. Cal. 2001). "'A [counterclaim] is stated for money had and received if the [plaintiff] is indebted to the [defendant] in a certain sum for money had and received by the [plaintiff] for the use of the [defendant].'" Murphy v. American General Life Ins. Co., 74 F.Supp.3d 1267, 1280 (C.D. Cal. 2015) (quoting Gutierrez v. Girardi, 194 Cal.App.4th 925, 937 (2011)).

Here, Dr. Hu's counterclaims allege that "[o]n or about September 17, 2013," Dr. Hu wired money "to a bank specified by [counter-defendant] Jumin Sun, with the intent of purchasing CSPC Limited Stock." (Def.'s Am. CC (ECF No. 39) at 14, 22.) Jumin Sun informed Dr. Hu "that the funds had been received by CSPC Limited" but, nevertheless, CSPC Limited "refused to acknowledge [Dr. Hu's] ownership interest in CSPC Limtied[.]" (Id.)

However, according to the amended counterclaim, counter-defendant CSPC Limited is a Hong Kong company, while plaintiff CSPC Dophen is a New Jersey Corporation. (Id. at 2.) And Jumin Sun "is the Chief Financial Officer of CSPC Limited[.]" (Id. at 3.) It is unclear what allegedly wrongful action plaintiff CSPC Dophen engaged in. Thus, the amended counterclaim

8

fails to allege a claim for conversion or money had and received against plaintiff CSPC Dophen. Plaintiff's motion to dismiss is, therefore, also granted as to these counterclaims. Defendant is also granted leave to amend with respect to these counterclaims.

**D. Seventh Amended Counterclaim—Fraud—and Eighth Amended Counterclaim—Negligent Misrepresentation**

Plaintiff's motion to dismiss argues that these amended counterclaims are "nearly identical" and both fail to satisfy the specificity required by Rule 9(b). (Pl.'s MTD (ECF No. 70) at 13-14.) Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[5] Fed. R. Civ. P 9(b).

"Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also 'to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" Bly–Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting In re Stac Elec. Sec. Litig., 89 F.3d 1399, 1405 (9th Cir. 1996)).

Circumstances that must be stated with particularity pursuant to Rule 9(b) include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Sanford v. Memberworks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). Likewise, "[u]nder California law, the 'indispensable elements of a fraud claim include a false

---

[5] "[T]he Ninth Circuit 'has not yet decided' the issue of whether negligent misrepresentation claims are subjected to Rule 9(b)." Petersen v. Allstate Indem. Co., 281 F.R.D. 413, 416 (C.D. Cal. 2012) (quoting Anschutz Corp. v. Merrill Lynch & Co., 785 F.Supp.2d 799, 823 (N.D. Cal. 2011). But see Kelley v. Rambus, Inc., 384 Fed. Appx. 570, 573 (9th Cir. 2010) ("Kelley's state law claims for common law fraud and negligent misrepresentation fail to meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure."). However, the undersigned "agrees with the line of cases that hold that negligent misrepresentation is a species of fraud, and, hence, must be plead in accordance with Rule 9(b)." Gilmore v. Wells Fargo Bank N.A., 75 F.Supp.3d 1255, 1270 (N.D. Cal. 2014).

representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'"
Vess v. Ciba—Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (quoting Moore v. Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996)).

Here, these amended counterclaims are asserted against "all Counter-Defendants." (Def.'s Am. CC (ECF No. 39) at 17-18.) And the allegations offered in support of these claims assert simply that the "Counter-Defendants made numerous representations" to Dr. Hu "concerning: (a) financial funding of the joint venture; (b) issuance of shares in CSPC Limited; (c) intent to market the products developed; and the (sic) (d) the consent to the formation of Dophen Biomed, Ind." (Id. at 17-18.) These allegations, however, fail to contain evidentiary facts such as the time, place, persons, statements and explanations of why the allegedly misleading statements are misleading. The allegations also fail to identify which alleged counter-defendant engaged in what alleged wrongful conduct.

Accordingly, plaintiff's motion to dismiss these counterclaims is granted. Defendant is also granted leave to amend these counterclaims.

### E. Tenth Amended Counterclaim—Declaratory Relief

Plaintiff next seeks dismissal of defendant's tenth amended counterclaim for declaratory relief. (Pl.'s MTD (ECF No. 70) at 22-24.) A claim for

> . . . declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs. If a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim. This is because declaratory relief is intended to offer guidance in shaping future conduct so as to avoid breach of a party's obligations. If that conduct has already matured, no such opportunity is present. Consequently, where a party can allege a substantive cause of action, a declaratory relief claim should not be used as a superfluous second cause of action for the determination of identical issues subsumed within the first.

Public Service Mut. Ins. Co. v. Liberty Surplus Ins. Corp., 51 F.Supp.3d 937, 950 (E.D. Cal. 2014) (citations and quotations omitted); see also Britz Fertilizers, Inc. v. Bayer Corp., 665 F.Supp.2d 1142, 1173 (E.D. Cal. 2009).

Here, defendant has asserted several counterclaims against plaintiff for money and for which plaintiff has not sought dismissal. Specifically, even after granting plaintiff's motion to

dismiss, defendant's counterclaims for breach of contract, failure to pay wages and other benefits, breach of fiduciary duty, and violation of California Business & Professions Code § 17200, *et seq.*, will remain.

Moreover, it appears that the allegations of defendant's counterclaim for declaratory relief concern past wrongs such as whether Dr. Hu obtained an ownership in CSPC Limited, whether Dr. Hu had a right to form Dophen Biomed, Inc., and whether the parties formed a joint venture. (Def.'s CC (ECF No. 39) at 21-22.) As noted above, "declaratory relief is intended to offer guidance in shaping future conduct so as to avoid breach of a party's obligations." Public Service Mut. Ins. Co., 51 F.Supp.3d at 950. Where, as here, the alleged wrongful conduct has already occurred, or "matured," a claim for declaratory relief is "superfluous." (Id.)

Accordingly, plaintiff's motion to dismiss this counterclaim will also be granted. Defendant, however, is also granted leave to amend this counterclaim.

### F. Punitive Damages

Plaintiff seeks to strike defendant's prayer for punitive damages as it pertains to the counterclaims for breach of contract, failure to pay wages and other benefits, and violation of Business & Professions Code § 17200, *et. seq.* (Pl.'s MTD (ECF No. 70) at 25.) Plaintiff's motion must be granted as defendant cannot obtain punitive damages pursuant to any of those claims.[6] See Berkla v. Corel Corp., 302 F.3d 909, 917 (9th Cir. 2002) ("punitive damages, which are designed to punish and deter wrongful conduct, are not available in breach of contract actions"); In re Wal-Mart Stores, Inc. Wage and Hour Litigation, 505 F.Supp.2d 609, 620 (N.D. Cal. 2007) ("it is settled law that punitive damages are not available under section 17200"); Czechowski v. Tandy Corp., 731 F. Supp. 406, 410 (N.D. Cal. 1990) (availability of "statutory penalties precludes an award of punitive damages" for failure to pay wages).

////

---

[6] "Although punitive damages are generally not allowed for breach of contract claims, where the gravamen of the action is not a breach of contract as such, but rather is the fraud inherent in the breach, exemplary damages may be awarded." Bowman v. Associates Home Equity Service, No. CIV-S-06-0463 DFL EFB PS, 2008 WL 906276, at *5 (E.D. Cal. Mar. 31, 2008). Here, however, the undersigned has already dismissed defendant's fraud counterclaim.

Accordingly, plaintiff's motion to strike this portion of defendant's amended counterclaim is granted and defendant is also granted leave to amend.

### G. Leave to Amend

For the reasons stated above, plaintiff's motion to dismiss will be granted. Accordingly, the following counterclaims found in the amended counterclaim will be dismissed—the third cause of action for defamation, fifth cause of action for conversion, seventh cause of action for fraud and intentional misrepresentation, eighth cause of action for negligent misrepresentation, tenth cause of action for declaratory relief, and eleventh cause of action for money had and received. Additionally, the amended counterclaim's prayer for punitive damages as it pertains to the first cause of action for breach of contract, second cause of action for failure to pay wages and other benefits, and ninth cause of action for violation of Business & Professions Code § 17200, *et. seq.* will be stricken.

The undersigned has carefully considered whether Dr. Hu could further amend the counterclaim to correct the defects noted above. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988); see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

However, when evaluating the failure to state a claim, the pleading of a pro se party may be dismissed "only where 'it appears beyond doubt that the [party] can prove no set of facts in support of his claim which would entitle him to relief.'" Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984) (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972); see also Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) ("Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 1988)).

Here, the undersigned cannot yet say that granting Dr. Hu further leave to amend would be futile. Dr. Hu will, therefore, be granted leave to file a second amended counterclaim.

Defendant is cautioned, however, that if defendant elects to file a second amended counterclaim "the tenet that a court must accept as true all of the allegations contained in a [pleading] is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. "While legal conclusions can provide the [claim's] framework, they must be supported by factual allegations." Id. at 679. Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" Id. at 680 (quoting Twombly, 550 U.S. at 557).

Defendant is also reminded that the court cannot refer to a prior pleading in order to make an amended pleading complete. Local Rule 220 requires that any amended counterclaim be complete in itself without reference to prior pleadings. The second amended counterclaim will supersede the amended counterclaim, just as the amended counterclaim superseded the original counterclaim. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Thus, in an amended counterclaim, just as if it were the initial counterclaim filed in the case, each counter-defendant must be listed in the caption and identified in the body of the counterclaim, and each claim and the involvement of each counter-defendant must be sufficiently alleged. Any amended counterclaim which defendant may elect to file must also include concise but complete factual allegations describing the conduct and events which underlie defendant's claims.

**III.    Counter-Defendants' Motions to Dismiss**

**A.    Personal Jurisdiction**

Counter-defendant CSPC Pharmaceutical Group Limited ("CSPC Limited") and counter-defendants Yingui Li, Jinxu Wang, Jumin Sun, and Dongchen Cai ("individual counter-defendants"), move to dismiss counterclaimant Dr. Hu's amended counterclaim based on a lack of personal jurisdiction pursuant to Rule 12(b)(2). (ECF Nos. 95 & 96.) Dr. Hu bears the burden of establishing that jurisdiction is proper, although he need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014). "Because California's long-

arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Federal courts may exercise either general or specific personal jurisdiction. General personal jurisdiction is found where the nonresident defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). "To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their 'longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'" Mavrix Photo, Inc., 647 F.3d at 1224 (quoiting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006)).

Specific personal jurisdiction is found where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts[.]" CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1075 (9th Cir. 2011). "[T]hat is, jurisdiction [is] based on the relationship between the defendant's forum contacts and plaintiff's claims." Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)) (internal quotation marks omitted). However, "the 'primary concern' is 'the burden on the defendant.'" Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S. Ct. 1773, 1780 (2017) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

A three-part test has been developed by the Ninth Circuit to analyze an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).

Here, Dr. Hu's amended counterclaim fails to allege any jurisdictional facts that could support either general or specific personal jurisdiction. To the contrary, the amended counterclaim alleges that counter-defendant CSPC Limited "is a foreign Corporation organized under the laws of Hong Kong, with its principal place of business" in Hong Kong." (Def.'s Am. CC (ECF No. 39) at 2-3.) And each of the individual counter-defendants allegedly reside in China. (Id. at 3.)

Moreover, the amended counterclaims asserted against either counter-defendant CSPC Limited or the individual counter-defendants are defamation, breach of fiduciary duty, conversion, fraud, negligent misrepresentation, violation of California Business & Professions Code § 17200, declaratory relief, and money had and received. (Def.'s Am. CC (ECF No. 39) at 10-22.) The amended counterclaim, however, fails to explain how any of these claims arise out of or relate to the counter-defendants' forum-related activities.

Dr. Hu's opposition to counter-defendant CSPC Limited's motion to dismiss relies heavily on the argument that counter-defendant CSPC Limited is the parent company of plaintiff CSPC-Dophen. (Def.'s Opp.'n (ECF No. 97) at 5.) However, "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015). "A basic tenet of American corporate law is that the

////

corporation and its shareholders are distinct entities." Dole Food Co. v. Patrickson, 538 U.S. 468, 474 (2003).

Imputed general jurisdiction over a foreign defendant that has an in-state affiliate may be found upon satisfaction of the alter ego test. "To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." Ranza, 793 F.3d at 1071 (quotation omitted).

"The 'unity of interest and ownership' prong of this test requires 'a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.'" Id. (quoting Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001)). "This test envisions pervasive control over the subsidiary, such as when a parent corporation 'dictates every facet of the subsidiary's business — from broad policy decisions to routine matters of day-today operation.'" Id. (quoting Unocal, 248 F.3d at 926). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." Id. (citing Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003) ). "[A] plaintiff does not meet the 'unity of interest and ownership' prong when the evidence shows only 'an active parent corporation involved directly in decision-making about its subsidiaries' holdings,' but each entity 'observes all of the corporate formalities necessary to maintain corporate separateness.'" Id. (internal brackets omitted) (quoting Unocal, 248 F.3d at 928).

Dr. Hu's opposition to the individual counter-defendants' motion to dismiss relies on the argument that that three of those counter-defendants were employees of plaintiff CSPC-Dophen. (Def.'s Opp.'n (ECF No. 99) at 2.) However, "[u]nder the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person. Rather, there must be a reason for the court to disregard the corporate form." Davis v. Metro Productions, Inc., 885 F.2d 515, 520 (9th Cir. 1989) (citations omitted). In this regard, Dr. Hu "has the burden of establishing that the individual defendant personally directed the activities toward the forum state giving rise to the

////

complaint." Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F. Supp. 743, 750 (C.D. Cal. 1995).

In short,

> jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary. Each defendant's contacts with the forum State must be assessed individually.

Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).

Here, the amend counterclaim's allegations fail to provide sufficient facts with respect to each counter-defendant's contacts with California. Accordingly, counter-defendants' motions to dismiss for lack of personal jurisdiction will be granted. However, because the undersigned cannot say that granting Dr. Hu leave to amend would be futile, Dr. Hu will also be granted leave to amend his counterclaims to address personal jurisdiction.

**B.      Service of Process**

Counter defendants also seeks dismissal due to insufficient service of process. (ECF Nos. 95 & 96.) Pursuant to Rule 12(b)(5), a defendant may move to dismiss the action where the plaintiff has failed to effect proper service of process in compliance with the requirements set forth under Rule 4 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(5). If the court determines that the plaintiff has not properly served the defendant in accordance with Rule 4, the court has discretion to either dismiss the action for failure to effect proper service, or instead merely quash the ineffective service that has been made on the defendant in order to provide the plaintiff with the opportunity to properly serve the defendant. See Marshall v. Warwick, 155 F.3d 1027, 1032 (8th Cir. 1998) ("[D]ismissal [is not] invariably required where service is ineffective: under such circumstances, the [district] court has discretion to either dismiss the action, or quash service but retain the case").

"[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444-45 (1946). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons

must be satisfied." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987).

Moreover, although a defendant's appearance to attack sufficiency of service is an admission that the defendant has actual knowledge of the lawsuit, actual knowledge does not substitute for proper service of process. See Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum."); Worrell v. B.F. Goodrich Co., 845 F.2d 840, 841 (9th Cir. 1988) (service fails unless defendant returns acknowledgment form); accord Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 492 (3d Cir. 1993) ("Notice to a defendant that he has been sued does not cure defective service, and an appearance for the limited purpose of objecting to service does not waive the technicalities of the rule"); Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Neither actual notice . . . nor simply naming the person in the caption of the complaint . . . will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4.").

When a defendant challenges service, the plaintiff bears the burden of establishing the validity of service as governed by Rule 4 of the Federal Rules of Civil Procedure. See Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004). Pursuant to Rule 4(f)(1) a party may be served in a foreign country "by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention[.]" Fed. R. Civ. P 4(f)(1). "Service pursuant to the Hague Convention is mandatory when serving a foreign defendant in a signatory country" and the United States and China are both signatories of the Hague Convention. Hyundai Merchant Marine Co. Ltd. v. Grand China Shipping (Hong Kong) Co. Ltd., 878 F.Supp.2d 1252, 1261 (S.D. Ala. 2012).

Here, Dr. Hu attempted service of process on counter-defendant CSPC Limited by way of personal service. (ECF No. 86-1.) And service of process on the individual counter-defendants was attempted via email. (ECF No. 86-2.) Such methods of service are not permissible here.[7]

---

[7] It appears Dr. Hu's ability to effect proper service may be limited to use of the mail. See

See HCT Packaging Inc. v. TM International Trading Limited, Case No. CV 13-8443 RGK (SHx), 2014 WL 12696776, at *6 (C.D. Cal. Mar. 10, 2014) ("personal service is insufficient" in Hong Kong).

Accordingly, defendants' motion to dismiss for insufficient service of process will also be granted. However, the court finds good cause to grant Dr. Hu leave to effect proper service.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's July 13, 2018 motion to disqualify (ECF No. 84) is denied;

2. Plaintiff's May 30, 2018 partial motion to dismiss (ECF No. 70) is granted;

3. Counter-Defendant CSPC Limited's August 13, 2018 motion to dismiss (ECF No. 95) is granted;

4. Counter-defendants Yingui Li, Jinxu Wang, Jumin Sun, and Dongchen Cai's August 16, 2018 motion to dismiss (ECF No. 96) is granted;

5. The amended counterclaims of defamation, conversion, fraud and intentional misrepresentation, negligent misrepresentation, declaratory relief, and money had and received are dismissed against plaintiff CSPC Dophen;

6. The amended counterclaims' prayer for punitive damages with respect to the counterclaims of breach of contract, failure to pay wages and other benefits, and violation of California Business & Professions Code § 17200, is stricken as to plaintiff CSPC Dophen;

7. Defendant is granted leave to file a second amended counterclaim and to effect proper service within twenty-eight days of the date of this order. However, defendant is not required to file a second amended counterclaim, or attempt to effect proper service, and may stand on the remaining claims of the amended counterclaim—breach of contract, failure to pay wages and other benefits, breach of fiduciary duty, and violation of California Business & Professions Code

---

generally In re Coudert Brothers LLP, No. 16-CV-8237 (KMK), 2017 WL 1944162, at *12 (S.D. N.Y. May 10, 2017) ("Court concludes that service could have been effected here by service via mail in accordance with the law of Hong Kong"); TracFone Wireless, Inc. v. Bequator Corp., Ltd., 717 F.Supp.2d 1307, 1309 (S.D. Fla. 2010) ("Hong Kong does not object to judicial documents being sent by postal channels pursuant to Article 10(a)"); Denlinger v. Chinadotcom Corp., 110 Cal.App.4th 1396, 1404 (2003) ("We think the view that article 10(a) allows service of process by mail represents the better position.").

19

§ 17200—asserted against plaintiff CSPC Dophen.  In the event that defendant does not file a timely second amended counterclaim, the court will construe defendant's election as consent to the dismissal of all other counter-defendants and all other claims without prejudice.

Dated:  November 26, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.pro se\cspc1895.mtd.orddlb2