1  JACK DURAN, JR. SBN 221704
   DURAN LAW OFFICE
2  4010 FOOTHILLS BLVD.
   S-103, 398
3  ROSEVILLE, CA 95747
   916-779-3316 (Office)
4  916-520-3526 (Fax)
   duranlaw@yahoo.com
5
   Attorney for Defendant/Cross-Complainant
6  ZHIXIANG HU, also known as "SEAN" HU

7                    UNITED STATES DISTRICT COURT

8                   EASTERN DISTRICT OF CALIFORNIA

9                        SACRAMENTO DIVISION

10 CSPC DOPHEN CORPORATION,          )  Case No.:      2:17-CV-01895-MCE-DB
                                     )
11              Plaintiff,           )  **ZHIXIANG "SEAN" HU'S SECOND**
                                     )  **AMENDED CROSS-COMPLAINT**
12      vs.                          )
                                     )  **JURY TRIAL DEMANDED**
13 ZHIXIANG HU, also known as SEAN HU, )
14 an individual,                    )  Action Filed: September 11, 2017
                                     )  Trial Date: TBD
15              Defendant.           )
                                     )  Assigned to Chief Judge: Morrison C. England,
16                                   )  Jr.
                                     )
17 _____  )

18

19

20

21

22

23

24

25

26

27

28

                                     1

ZHIXIANG HU, also known as SEAN HU, )
an individual,                        )
                                      )
            Cross-Complainant,        )
                                      )
      vs.                             )
                                      )
CSPC DOPEHN CORPORATION, a New        )
Jersey Corporation; CSPC              )
PHARMACEUTICAL GROUP LIMITED,         )
a Hong Kong Corporation; CSPC-Holdings, )
a corporation of unknown origin; YINGUI )
LI, an individual and Officer and Director of )
CSPC-Pharmaceutical Group Limited;    )
JINXU WANG; an individual and Officer )
and Director of CSPC-Pharmaceutical   )
Group Limited, JUMIN SUN; an individual )
and Officer and Director of CSPC-     )
Pharmaceutical Group Limited,         )
DONGCHEN CAI, an individual and       )
Officer and Director of CSPC-         )
Pharmaceutical Group Limited          )
; and ROES 1 through 50, inclusive,   )
                                      )
            Cross-Defendants.         )

**DEMAND FOR JURY TRIAL FRCP 38**

_____

      Defendant and Cross-Complainant, Zhixiang ("Sean") Hu ("Dr. Hu"), by and through counsel, files this Cross-Complaint against Plaintiffs and Cross-Defendants CSPC Dophen Corporation ("CSPC-Dophen"), and Counter-Defendants, CSPC Pharmaceutical Group Limited ("CSPC Limited"), CSPC-Holdings, YINGUI LI, an individual and officer, Director of CSPC Pharmaceutical Limited; JINXU WANG; an individual and officer, Director of CSPC Pharmaceutical Limited, JUMIN SUN; an individual and officer, Director of CSPC Pharmaceutical Limited, and DONGCHEN CAI, an individual and officer, Director of CSPC Pharmaceutical Limited, as follows:

//

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL
Case No. 2:17-CV-01895-MCE-DB

## INTRODUCTION

1.      This case concerns scientists, inventions, intellectual property and what a large foreign Pharmaceutical company, CSPC-Pharmaceutical Group Limited and their highest-ranking corporate officials are willing to do to get their hands on an American citizen's valuable technology.

## PARTIES, JURISDICTION AND VENUE

2.      Cross-Complainant Zhixiang ("Sean") Hu, Ph.D, is an individual who resides in Yolo County, California.

3.      Cross-Defendant CSPC Dophen Corporation ("CSPC-Dophen") is a New Jersey Corporation with its principal place of business in Sacramento, California, and is subject to personal jurisdiction in this Court.

4.      Cross-Defendant CSPC Pharmaceutical Group Limited ("CSPC Limited") is a Chinese Corporation organized under the laws of Hong Kong, with its principal place of business at Suite 3206, 32/F, Central Plaza, 18 Harbour Road, Wan Chai, Hong Kong, and a headquarter in Hebei Province, China.

5.      Cross-Defendant CSPC Holdings, is a corporation of unknown origin formerly owned by Doungen Cai, during all times material to this litigation and is now alleged to be owned by CSPC-Pharmaceutical Limited.

6.      Cross-Defendant Yingui Li is an individual who has been working at CSPC-Dophen. He is  via a director of board of CSPC-Dophen and an officer of CSPC-Limited. On information and belief, Mr. Li is a Chinese citizen holding United States H1 and B1 visas, and has stayed in in hotels in Sacramento, while on official business related to CSPS-Dophen and also resided in Woodland Hills and Sacramento.

7.      Cross-Defendant Jinxu Wang is an individual working as the Chief Executive Office of CSPC-Dophen.  On information and belief, Dr. Wang is a director of board of both CSPC-

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

Dophen and CSPC Limited, a Chinese citizen with United States L1 and B1 visas, and stays in district Hotels when he has visited CSPC-Dophen in Sacramento, California.

8.      Cross-Defendant Jumin Sun is an individual who is the de-facto Chief Financial Officer of CSPC-Dophen, he is in direct control of and has direct access to CSPC-Dophen financial accounts.  On information and belief, Mr. Sun is also the CFO of CSPC-Limited, resides in Hebei Province, China, is a Chinese citizen, and holds a 10-year United States B1 visa.  He stays in Hotels in Sacramento when he comes to visit CSPC-Dophen.

9.      Cross-Defendant Dongchen Cai is an individual and is the Chairman of both CSPC-Dophen and CSPC Limited. On information and belief, Mr. Cai holds a Hong Kong passport with a 10-year United States B-1 visa, comes to US often, and stays in Sacramento Hotels when he is in United States visiting CSPC-Dophen.  Mr. Cai is alleged to be the former owner of CSPC-Holdings.

10.      The true capacities of cross-defendants §3-7, inclusive, are unknown to Cross-Complainant.  Cross-Complainant's cross Cross-Complainant will appropriately seek leave of Court to amend this Cross-Complaint to show the true capacities of such cross-defendants when that information has been ascertained.

11.      Cross-Defendants ROES 1-50 are currently unidentified and whereabouts unknown but are alleged to be employees, agents or were directed by Cross-Defendants.  As soon as these defendants are identified Cross Plaintiff shall amend their complaint to reflect their identities and addresses.

12.      Venue is proper in this district pursuant to 28 U.S.C. section 1391.  CSPC-Dophen has its principal place of business in this district, and a substantial part of the events and injury giving rise to the claims set forth herein occurred in this district.  Upon information and belief, the cross-defendants have committed wrongful acts in this district, as alleged herein.

13.      The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. section 1367.

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

14.    The cross-claims arise out of the same matters and transactions described in the First Amended Complaint, and this Court has jurisdiction over the matters, transactions, and parties that are the subject of the cross-claims pursuant to Federal Rules of Civil Procedure 13, 19, and 20.

**BACKGROUND FACTS**

**Dr. Zhixiang "Sean" Hu and his Patented Transglutaminase Technology**

15.    Cross-Complainant Dr. Zhixiang "Sean" Hu is an accomplished scientist and has conducted research and development in the pharmaceutical industry, specifically US biotech industry, for over twenty-three (23) years.

16.    Before Dr. Hu joined CSPC-DOPHEN in 2011, Dr. Hu was a well-known expert in enzyme and protein engineering and its application in protein drug development. Dr. Hu had worked in pharmaceutical and Biotech companies like Pfizer, Lexicon, Novo Nordisk, and Novozymes. He had filed seven patents on the usage of Transglutaminase for protein drug development before CSPC approached him. Four of such patents were assigned to his former employers, Novo Nordisk, and three provisional patents on his own (US 61/291361; US 61/291364; and US 61/543809) on Transglutaminase cloning, purification and its use in protein conjugation, which formed the foundations of the patents, projects and trade secrets of his work at CSPC-Dophen involved in this litigation.

17.    During his tenure at Novozymes as a research manager, Dr. Hu took on new challenges on industrial enzyme application on biofuel, but still kept his interest in enzyme application in drug development. Assured by Novozymes' management that Novozymes had no interest in pursuing biopharmaceutical application of enzymes, Dr. Hu personally collaborated with outside researchers such as Dr. Michael Xu at PegBio and Dr. Yifeng Yin to initiate human growth hormone (hGH) and interferon (IFN) alfa $\alpha$. PEGylation using Transglutaminase.mTGase).

Dr. Hu already had cloned and purified this enzyme and obtained proof of principle results for hGH and IFN alfa PEGylationα. by 2010.

18.     Dr. Hu also possessed a trade secret and know-how on obtaining very cheap and food-grade Transglutaminase, which could be purified and used for protein drug conjugation. The Antibody-drug Conjugates (ADC) patent filed by Dr. Hu during his employment at CSPC-Dophen used the very exact Transglutaminase obtained from this source.

19.     Dr. Hu also published a book chapter summarizing the use of Transglutaminase on protein drug modification in September 2011 (Pages 151-172, Willey, 2011). In that publication, Dr. Hu revealed the process and preliminary results of hGH and IFN alfa PEGylation. (*Ibid.*, page 161).

**Dr. Hu is approached by Representatives of CSPC-Limited for a Joint Venture**

20.     On or about June 15, 2011, CSPC-Limited (hereinafter "CSPC") executive, Yingui Li, obtained Dr. Hu's business plan from Dr. Ouyang and presented it to CSPC Limited management for evaluation. Yingui Li proposed to work on PEGylation of hGH and IFNα based on Dr. Hu's technology platform.

21.     On information and belief, at the same time while they were reviewing Dr. Hu's technology platform, CSPC was in advanced negotiations with a group of scientists from Amgen in Thousand Oaks, California, to start a joint company to "clone" Amgen's protein drugs, and also paid about $400,000 out of a total of $1M to a Genentech researcher (she came from Hebei Province, where CSPC is headquartered) to illegally acquire a cell line of Genentech's antibody drug. CSPC's negotiations with Amgen's group broke down and the Genentech researcher who promised to acquire the Genentech cell line was not able to deliver.  CSPC was thereafter alleged to have taken the researcher to arbitration in Beijing to recover the prepaid $400K fronted to acquire the Genentech cell line.

22.     CSPC's Yingui Li asked Drs. Hu and Ouyang in June/July, 2011 to recruit a team to build a bio-therapeutic development lab with CSPC based on Dr. Hu's Transglutaminase

technology and proposed that CSPC would contribute funding and Dr. Hu and other researchers would have ownership of the lab, however, Dr. Ouyang declined.

23.     Mr. Li continued the joint lab discussion with Dr. Hu.  During early discussions of ownership, there was a preliminary schedule to divide ownership based on how much CSPC would invest in the venture. Dr. Hu asked for ownership starting at 80% of the joint lab, depending on how much money CSPC would contribute. to Yingui Li, on behalf of CSPC. CSPC-Pharma then tentatively agreed to a joint ownership with Dr. Hu.

24.     Mr. Li invited Dr. Hu to visit CSPC on August 21, 2011.  During Dr. Hu's visit of CSPC at Shijiazhuang City, China, Dr. Jinxu Wang, CSPC Executive, promised Dr. Hu that CSPC would invest **$5 million each year** in the venture and told Dr. Hu "not to worry about ownership" but join CSPC as an employee first. Dr. Wang said, "one gets nothing if no pie is in the sky, but a big piece when there is a big pie to share."

25.     Yingui Li also told Dr. Hu that joining as an employee first could bypass the legal formality and speed up the research lab building process. CSPC upper management team (including Mr. Dongchen Cai) met Dr. Hu and painted a very bright picture of CSPC's plan for the joint venture. To show his sincerity, Dr. Hu agreed to start as an employee. As soon as Dr. Hu agreed to join as an employee, Yingui Li sent out CSPC-Dophens' employment contract to Dr. Hu to sign. The contract's main premise was that "Dr. Hu would transfer his transglutaminase patents to CSPC-Dophen upon accepting this job offer" (**Exhibit 1**)."

26.     After much thought and contemplation, Dr. Hu initially declined to sign CSPC-Dophen's employment contract, conflict of interest and confidentiality agreements. Then, Yingui Li sent the job offer template letter Dr. Hu prepared to other potential employees of CSPC-Dophen to Dr. Jinxu Wang. Dr. Wang used the exact same offer letter written by Dr. Hu to make an offer to Dr. Hu. The official employment starting date was Nov 1, 2011.

//

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

**Dr. Hu Joins CSPC as an Employee**

27.     However, on information and belief, Hu did eventually sign an employment agreement with CSPC-Dophen, <u>but not the conflict of interest and confidentiality agreements</u>. In order to ensure Dr. Hu's continued efforts and contribution to the joint venture, on or about November 1, 2011, CSPC did bring on Dr. Hu on as an employee.  Hu was named Director of the joint venture laboratory located at 2945 Ramco Street Suite 150, West Sacramento, California. CSPC's Jinxu Wang and Yingui Li further promised to resume ownership discussions when "the pie is big enough to slice." As a good gesture, Dr. Hu agreed to postpone the ownership negotiation. Attached hereto as **Exhibit 2** is the employment offer letter from CSPC Dophen signed by Dr. Wang and Dr. HuHu's basic salary was divided into two halves, one half would be paid in US under CSPC-Dophen, and one half would be paid by CSPC in China per agreement between CSPC and Dr. Hu (**Exhibit 3**).

28.     The parties initially agreed that CSPC would contribute $5 million per year to the joint venture until it could sustain itself. In return for its contribution, CSPC would receive a 20% ownership interest in the joint venture for the first year. The following year, CSPC was supposed to contribute another $5 million dollars and increase its ownership in the joint venture to 30%. However, CSPC never invested any money in a lump sum but paid salary and costs on a monthly basis, totaling to only  $6 million in six years until June of 2017.

29     Dr. Hu found and negotiated laboratory rental space from Jackson Properties who owned 2945 Ramco St., West Sacramento and signed a lease in early October 2011.  Dr. Hu personally guaranteed this lease as both CSPC and CSPC-Dophen had no credit history in United States.

30.     In an effort to continue progress on opening the lab, Dr. Hu personally purchased lab equipment stored in his garage, and installed counters and cabinets at the Ramco location.

31.     Dr. Hu continued to purchase most of the equipment and supplies for the laboratory on his personal credit cards until June 2012, when he applied for a company credit card under his

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

personal credit line. After that, re-agents were purchased on Dr. Hu's personal credit card until sometime in the summer of 2016.

32.     The initial research materials were provided by Dr. Hu from his collection acquired over nearly 20 years of research.  These included the Transglutaminases, Baf3 cell, hGH, IFN proteins, DNA primers, expression vectors and PEGs.

33.     After Dr. Hu joined CSPC-Dophen, he pushed to register a different company to recognize the ownership of founders, Dr. Hu and Dr. Yin. Yingui Li agreed to talk to CSPC and even solicited the name of the company from employees and Dr. Hu, and CSPC agreed to the "ConjuPro" name to reflect Dr. Hu's enzymatic Conjugation technology. However, when Yingui Li completed the registration of ConjuPro, he still put CSPC with 100% ownership. Disappointed at CSPC's 100% ownership of Conjupro, Dr. Hu told Yingui Li that such a name change was meaningless, and the lab continued to use CSPC-Dophen as its name.

34.     In May 2012, CSPC-Dophen purchased a shell building from a bank-foreclosed property at 4070 Truxel Rd. in Sacramento.  Dr. Hu's wife, Jiaying Fan, worked on the lab design for two (2) months and prepared electronic drawings for construction.  Jiaying thought that Dr. Hu had ownership in the lab and did not ask for any payment.. Dr. Hu gave his unused laptop computer to Jiaying for the work.

**CSPC Reneges on the CSPC-Dophen Financing and showed no Commitment**

35.     From its initiation until July 2017, CSPC-Dophen received month to month funding from CSPC based on monthly spending, and in many occasions, there was no money from CSPC a few months in a row. Often, CSPC-Dophen did not even had enough fund balance to pay employee salaries.

36.     After about a year in operation (October 2012), CSPC-Dophen spent most of the time on recruiting and lab building. There was not much progress on research. Being impatient, CSPC asked Dr. Hu to reorganize the team and to fire most of researchers, including founder Dr. Yin.

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

37.     In January 2013, Dr. Jinxu Wang came to a JP Morgan meeting in San Francisco, California. Dr. Wang asked Dr. Hu to meet him in San Francisco and showed his displeasure over CSPC-Dophen's performance, stating: "Dr. Hu, I am sure that you could find a good job and I can ask Yingui to go back to China if this lab does not work out".

38.     CSPC also refused to send money to CSPC-Dophen to pay HeadWaters Construction for months from January to May, 2013, who had been constructing the lab at 4070 Truxel Rd.  HeadWaters threatened to sue CSPC-Dophen and put a lien on the building. Yingui Li and Dr. Hu were perplexed as how to fund the lab without CSPC's promised contributions.

**Pharma Entices Hu to Transfer his Technology to CSPC in Exchange for CSPC Stock Option**

39.     In February 2013, Dr. Hu discovered that Transglutaminase could conjugate toxins to monoclonal antibodies (mAb) to make antibody drug conjugate (ADC). ADC as a targeted cancer therapy was very hot at that time. Limited's Dr. Wang was very happy with the discovery and promised to ask the CSPC Board to award CSPC stock options for Dr. Hu.

40.     Near the end of March 2013, Dr. Wang told Dr. Hu that he would be able to purchase 500,000 IPO shares of CSPC-LIMITED at 1.0 RMB/share. Dr. Wang also told Dr. Hu that 500,000 IPO shares equal to 2 million CSPC shares traded on Hong Kong Stock exchange due to 2 times 2 for 1 split. In exchange, Yingui Li asked Dr. Hu to sign CSPC-Dophen's conflict of interest and confidentiality agreements, which were refused by Dr. Hu in 2011. Dr. Hu signed the agreements out of goodwill on April 4, 2013. CSPC also asked to transfer PEGylated IFN alfa project, which was almost entirely based on Dr. Hu previous data before he joined CSPC-Dophen, to CSPC. The technology transfer took place in April/May, 2013.

41.     Jinxu Wang arranged Dr. Hu's CSPC share purchase through Jumin Sun (CFO of CSPC Limited) on August 31, 2013.

42.     Dr. Hu transferred, the funds to CSPC to purchase 500,000 IPO shares of CSPC per Jumin Sun's instructions on September 17, 2013, and Jumin Sun acknowledged that CSPC received

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

the funds and confirmed the stock purchase, and promised to follow up with formal stock share registration documentation on the same day.

43.    On information and belief, Mr. Cai directed the funds to a CSPC Employee Investment Partnership under his control. After the stock purchase, Dr. Hu asked Jumin Sun for stock certificates several times. Both Jumin Sun and Jinxu Wang told Dr. Hu that *no one in CSPC received stock certificates*, but  assured Dr. Hu his shares were "recorded and safe".

**CSPC Ceases Paying Stock Dividends to Dr. Hu**

44.    On information and belief, CSPC paid dividends in 2014 and 2015 based on Dr. Hu's 2 million stock shares of CSPC Limited traded on the Hong Kong Stock exchange. In or about the summer (June through September) of 2016, Yingui Li notified Dr. Hu that a Hong Kong bank account was needed to get the 2016 dividends in Hong Kong currency. As Dr. Hu had no time to travel to Hong Kong to get a Hong Kong bank account, Jumin Sun notified Dr. Hu on or about April 24, 2017 that he was considering simply paying Dr. Hu the dividends inwith Chinese currency, yuan.

45.    Dr. Hu obtained a Hong Kong bank account in July 10, 2017 and since that time has attempted on multiple occasions to contact Limited's Jumin Sun regarding unpaid stock dividends. Jumin Sun has never replied nor did CSPC Limited pay the dividends to Dr. Hu's Hong Kong bank account for years 2016, 2017 and 2018. The unpaid dividends amount to total HK\$760,000 (2,000,000*(0.11+0.12+0.15)) not counting year 2019.

**CSPC continues its Limited Funding of CSPC-Dophen and Creation of Spinoff Dophen Biomed and Applies for NIH Grant Funding**

46.    From 2012 to 2016, Dr. Hu met Limited's  Dongchen Cai multiple times in Mr. Cai's office in China and once in Sacramento. Mr. Cai told Dr. Hu to find alternative funding for CSPC-Dophen to be self-sufficient. As CSPC-Dophen was 100% owned by CSPC, Dr. Hu was not able to get any external funding. CSPC-Dophen never had more than \$100 to \$200K in its bank accounts.

47.     On information and belief, CSPC frequently let CSPC-Dophen run out of money, making Dr. Hu unable to pay Lab salaries and expenses numerous times. Yingui Li even made a proposal for CSPC-Dophen to go public on NASDAQ in April 2013. In Yingui Li's business development presentation, Yingui Li stated that CSPC-Dophen was based Dr. Hu' Transglutaminase (hereafter abbreviated as on Dr. Hu's mTGase) site-specific conjugation platform and used the exact same schematic drawing from Dr. Hu's 2011 publication by Wiley (before Joining CSPC-Dophen) to illustrate CSPC-Dophen technology.

48.     Dr. Hu had been asking Jinxu Wang to change CSPC-Dophen into a US company to honor Dr. Hu's ownership and to enable it to apply for US government grants.

49.     On information and belief, CSPC did not want to give up its 100% ownership but wanted US government money. Dr. Wang told Dr. Hu in an email that he would address questions related to the ownership and US government grant application reequipments when he came to CSPC-Dophen in April, 2014. Thereafter, Jinxu Wang ordered Jasmine Xiong, administrative assistant, to register a new corporation, registered as Dophen Biomed, Inc. On or about April 21, 2014, Ms. Xiong, without Dr. Hu's knowledge, registered Dophen Biomed, Inc. under Dr. Hu's name to satisfy the 51% U.S. citizen ownership requirement for NIH funding.

50.     In early 2014, Dr. Ayala Luria joined the laboratory as a part-time consultant.  Dr. Luria had grant-authoring experience, and upon the registration of Dophen Biomed, Inc., began the Small Business Innovation Research (SBIR) grant application for the hGH project. The application process required proof of principle data concerning animal studies.  As such, Dr. Hu contacted CSPC's China DMPK division for assistance. Unable to receive the assistance necessary from CSPC, it became apparent that the lab initiated its own mouse testing facility.  As Dr. Luria switched her focus to animal facility setup, she put the grant writing on hold.

51.     In or about August 2014, the animal facility was complete. However, Dr. Luria accepted a faculty position in Stanford University. Grant application preparation resumed in or about September 2015 after Dr. Jayakumar Poovassery joined. At the beginning of 2016, two SBIR applications were submitted NIH.

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

52.     Since the decision to move forward with obtaining U.S. government grant funding, Jinxu Wang and Mr. Cai were updated regularly via phone, email and monthly reports about the patent filings and grant application status.

**Dophen Biomed Inc. Filed ADC Patent Application and Received a U.S. NIH Grant**

53.     After registration of Dophen Biomed, Inc., it filed a US patent application on Dr. Hu's mTgase catalyzed conjugation of antibody drug conjugate (ADC) for targeted cancer therapy via Morrison Foerster attorney, Janet Xiao in June 2014. One of the two SBIR application prepared by Dr. Poovassey was DP303c based on this ADC patent.

54.     NIH thereafter awarded Dophen Biomed Inc., a fast track phase 1 & 2 SBIR grant (worth $1.5M) in July 2016 to fund an Investigational New Drug (IND) Application of became DP303c due to its novelty of mTgase catalyzed toxin conjugation.became—CSPC Limited and Dophen Biomed.

**CSPC Demands Dr. Hu Transfer the Patent and Projects to the Parent Corporation**

55.     Near the end of 2016, Dr. Hu's mTgase based ADC patent entered a national phase, during which patent applications with each nation or regions are filed individually. CSPC -Limited wanted the patent to be transferred to CSPC or CSPC-Dophen.  Dr. Hu agreed to transfer the patent rights in the great China region only to CSPC near the end of 2016.

56.     Dr. Hu reminded CSPC of its promise to him and Dpohen employees' fair share of CSPC-Dophen. After Dr. Jinxu Wang orally agreed to ~20-30% ownership of CSPC-Dophen to all employees, Dr. Hu assigned the ADC patent to CSPC-Dophen in March 2017.

57.     Dr. Lixin Feng had been in communication with FDA since 2016 about DP303c's IND Application and obtained assistance for Dophen Biomed Inc., in preparing such an application as a US small business entity. In March/April, 2017, Dophen Biomed Inc. filed DP303c IND Application under Dophen Biomed Inc.

58.     As soon as Dophen Biomed Inc., finished IND application, CSPC-Limited wanted it owned under CSPC or CSPC-Dophen.  Dr. Hu pressed CSPC for his and employees' CSPC-Dophen ownership to be recognized. Initially, CSPC proposed a merger of CSPC-Dophen and

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

Dophen Biomed, Inc. Dr. Hu would have 10-15% of the merged entity and the employees would own another 10-15%. In order to comply with US requirements for grant funding (51% US ownership) and still keep its tight grip on CSPC-Dophen, CSPC opined that a CSPC representative with US citizenship to hold a 21 to 31% share of CSPC-Dophen, in addition to CSPC's 49% share of CSPC-Dophen in June 2017.

59.   CSPC-Limited's Dr. Jinxu Wang acknowledged that he did not have the final authority to make decision on CSPC-Dophen ownership and suggested Dr. Hu to discuss it with Mr. Dongchen Cai directly. I n May, 2017, Dr. Hu flew to Beijing to meet Mr. Dongchen Cai. Mr. Cai agreed orally to Dr. Hu's 15% plus other employees' 15% ownership of CSPC-Dophen during the discussion and promised a lump sum investment of $30 Million into CSPC-Dophen.

60.   However, as soon as Dr. Hu came back to California, Dr. Jinxu Wang told Dr. Hu that Mr. Cai's promise was for a "future" company excluding all current assets of CSPC-Dophen and Dophen Biomed Inc. Dr. Hu told Dr. Wang that excluding all current assets (tangible and nontangible intellectual properties), there would be is nothing left to own. Dr. Hu insisted that his ownership of CSPC-Dophen to be honored before the DP303c project could be transferred.

61.   In June 2017, CSPC's CEO, CSO, CFO, and VP came to CSPC-Dophen in Sacramento to push Dr. Hu to transfer the project from Dophen Biomed Inc., to CSPC.

62.   Near the end of June 2017, the NIH-SBIR grant was up for renewal and there was an entry in the report to indicate the ownership of intellectual property (IP). The IP was under Dophen Biomed Inc. when the Federal grant was awarded. Now, the 100% Chinese owned CSPC or CSPC-Dophen took over the patent after the US government provided grant support. For the grant renewal to make sense, Dr. Hu asked the administrative assistant, Ms. Ashley Smith, to inquire with Morrison Foerster attorney, Janet Xiao, onas to how to transfer the patent back to Dophen Biomed Inc. When Janet Xiao received the inquiry, she contacted CSPCLimited about the request and discussed with her colleague, Bryan Wilson, counsel for CSPC in the instant lawsuit against Dr. Hu.

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

**CSPC Retaliates Against Dr. Hu by Termination, Withholding Stock Dividends, Shares and Salary**

63.     On information and belief,  Dr. Jinxu Wang and Mr. Yingui Li came from China to California on July 3 or 4, 2017, and asked Dr. Hu to meet them in their hotel in the Bay Area in the evening on July 4. Dr. Wang told Dr. Hu that CSPC had decided to fire Dr. Hu in order to acquire full control of CSPC-Dophen, ADC patent and DP303c project, and asked Dr. Hu's terms to transfer DP303c.

64.     Disappointed at CSPC's unilateral move, Dr. Hu did not seek to continue the collaboration with CSPC. Dr. Jinxu Wang and Dr. Hu tentativly agreed to the terms of the termination: 1) CSPC would transfer Dr. Hu's IPO shares to Dr. Hu; 2) CSPC-Dophen would continue to pay Dr. Hu as a consultant to facilitate the transfer; 3) Dr. Hu would get $1 Million cash upon the completion of the transfer of DP303c; 4) Dophen Biomed Inc continue to rent and use 4070 Truxel Rd as its business address; 5) Dr. Hu has the right to use and license his own ADC patent outside of China.

65.     Dr. Hu left for Guangzhou for a business trip in the morning on July 5, 2017. On the same day, Jinxu Wang and Yingui Li came to CSPC-Dophen  in Sacramento to promote Dr. Lixin Feng to the director/president of CSPC-Dophen and told other employees that Dr. Hu had resigned or left CSPC-Dophen. In the meantime, they confiscated all property of Dophen Biomed Inc. and changed all locks and key cards to lock Dr. Hu out.

66.     Dr. Hu came back from his business trip on July 9, 2017 and found out that he was locked out of the lab and his office. His email account on DophenBiomed.com (registered under his own name) was locked too. Yingui Li and Dr. Lixin Feng delivered a termination letter dated July 21, 2017 to Dr. Hu's home but refused to pay $6,865.63 in wages due and owing, as well as $12,014.84 in unpaid vacation. Dr. Hu filed a labor complaint with California labor commissioner in September 2017. Yingui Li told Dr. Hu that CSPC would pay Dr. Hu's salary after Dr. Hu withdrew his labor compliant.

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

67.     CSPC withheld Dr. Hu's stock dividends (total HK$760,000 for years 2016 through 2018, & now part of 2019) as well as CSPC-LIMITED Stock shares, and refused to acknowledge Dr. Hu's ownership interest in CSPC-Dophen. CSPC has failed to deliver the stock certificates and/or ownership documents to Dr. Hu despite representations by various directors of CSPC of the transaction's existence. CSPC has knowingly destroyed company documents which show Dr. Hu's ownership of CSPC stock shares. the following negotiations.

68.     On information and belief, CSPC first denied that Dr. Hu ever purchased any stock shares from CSPC by saying Dr. Hu's stock purchase fund was transferred to Mr. Dongchen Cai controlled CSPC Employee Investment partnership which had no relationship with CSPC or CSPC-Dophen. Then, CSPC-Dophen denied that the stock share had nothing do to with CSPC-Dophen. Then CSPC claimed that the shares purchased by Dr. Hu were restricted stock shares, which could be revoked unilaterally by CSPC at any time. However, CSPC never stated that fact, notified Dr. Hu of such restrictions, and never asked Dr. Hu to sign any documents to acknowledge these restrictions. In the end, Yingui Li stated simply in an email and on Wechat that, "CSPC would not honor its reward to employees who dare to challenge or alienate CSPC".

69.     CSPC-Limited withheld Dr. Hu's 2016 -2019 stock dividends as well as his CSPC-Limited stock shares, and refused to pay Dr. Hu's salary, and denied Dr. Hu's ownership of CSPC-Dophen. –

70.     To wash itself clean in its scheme to obtain US government funding under the disguise of Dophen Biomed Inc, CSPC hired a "John Doe" write to the NIH in July 2017 and accused Dr. Hu of "cheating the government grant with CSPC-Dophen's data." CSPC-Dophen disparaged Dr. Hu of stealing company funds and creating a sham company in their communication to Dr. Hu's collaborators in August 2017.  CSPC-Dophen went further to ask Dr. Hu's collaborators not to do business with Dr. Hu.  On information and belief, CSPC-Dophen also instructed its employee to distribute rumors that Dr. Hu was fired by CSPC-Dophen because he abused employees and stole company property.

71.     CSPC has routinely attempted to take advantage of Dr. Hu and has consistently reneged on its promises. On August 18, 2017, Dr. Hu flew to CSPC headquarters in Shijiazhuang City to meet Mr. Cai to negotiate a settlement. Dr. Hu asked to have a neutral third party to be present. CSPC rejected the third party's presence. However, a supposed talk just between Mr. Cai and Dr. Hu turned out to be a team of CSPC against Dr. Hu. CSPC had Mr. Cai, Dr. Wang, Mr Yingui Li and Dr. Chunlei Li at the meeting. Under this very unfair circumstance, Dr. Hu tentatively agreed to stock cash out in three transactions, 10% ownership of DP303c, and use of ADC patent right outside China. However, CSPC representative changed the terms completely again in its settlement proposal on August 30, 2017.

72.     FDA communicated with Dr. Hu in May, 2017 that antibody viral clearance data were needed for FDA to act on DP303c IND application. As CSPC supplied antibody, it held the key to move DP303c forward in providing viral safety data. To save the drug molecule for the benefits of cancer patients,  On October 2, Dr. Hu wrote a letter to FDA to transfer DP303c sponsorship to CSPC-Dophen.

73.     On information and belief, CSPC submitted falsified viral clearance data to FDA in order to obtain fast approval of DP303c clinical trial. FDA flew to China before the end of 2017 to inspect the sites where fraudulent samples were generated. FDA also inspected other Chinese contract research organizations which had done other work for CSPC-Dophen. Subsequently, FDA denied or withheld the approval of DP303c application and asked federal law enforcement agency to initiate criminal investigations of CSPC's fraudulent activities.

74.     Nearly three (3) months after Dr. Hu's employment termination, CSPC finally paid $17,560.83 on October 9, 2017 of his unpaid wage. However, CSPC knowingly still owes Dr. Hu $1,319.64 of salary and vacation.

**Allegations Specific to Counter-Defendant Corporation CSPC (Pharma)=Piercing the Corporate Veil of CSPC-Limited**

75.     At all times herein mentioned Counter-Defendant CSPC, and each of them, were an

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

owner, co-owner, agent, representative, partner and or alter ego of its co-Counter-Defendants or otherwise acting on behalf of each and every remaining Counter-Defendant and in doing the things hereinafter alleged, were acting within the course and scope of their authority as an owner, co-owner, an agent, representative, partner or alter ego of co-Counter-Defendants, with the full knowledge, permission and consent of each and every remaining Counter-Defendant, each co-Counter-Defendant having ratified the acts of the other co-Counter-Defendants.

76.    Cross-Complainant is informed and believes and, upon such information and belief, alleges that each of the Counter-Defendants and cross-defendants, inclusive, were and are in some manner responsible for the actions, acts and omissions herein alleged, and for the damage caused by the Counter-Defendants and cross-defendants, and are, therefore, jointly and severally liable for damages to Counter claimants and cross-complainant.

77.    Counter claimant and Cross-Complainant is informed and believes and, upon such information and belief, alleges that each of the Counter-Defendants cross-defendants, inclusive, were, at all times herein mentioned, acting in concert with, and in conspiracy with, each one of the remaining Counter-Defendants cross-defendants.

78.    Wherever appearing in this Counter Cross-Complaint, each reference to Counter-Defendants cross-defendants or to any of them, is intended to be and shall be a reference to all Counter-Defendants cross-defendants hereto, and to each of them, named and unnamed, including all fictitiously named Counter-Defendants cross-defendants, unless said reference is otherwise specifically qualified.

79.    Counter claimant Cross-Complainant alleges that Counter-Defendants CSPC and CSPC-Dophen cross-defendants Pharma and 4 individuals (hereinafter collectively "Counter Cross-Defendant Shareholders"), are and were at all times shareholders of the stock/interest of CSPC and CSPC-Dophen (hereinafter "Corporate Counter Cross-Defendants") and/or promoters

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

of Corporate Counter Cross-Defendants and or subscribers of stock/interest therein.  There always

exists, a unity of interest between Counter Cross-Defendant Shareholders and Corporate Counter

Cross-Defendants, such that any individuality and separateness between them ceased between

Counter Cross-Defendant Shareholders and Corporate Counter Cross-Defendants and Corporate

Counter Cross-Defendants are the alter ego of Counter Cross-Defendant Shareholders as follows

and vis-versa:

80.     Under the alter ego theory, the Corporate Counter Cross-Defendants are the alter

egos of CSPC-Dophen. Under the alter ego doctrine and its figurative synonyms "pierce the

corporate veil" and "disregard the corporate fiction," when a Corporate Counter Cross-Defendant

is used by an individual or individuals, or by another corporation to perpetuate fraud, circumvent a

statute or accomplish some other wrongful or inequitable purpose, the court may disregard the

corporate entity and treat the corporate entity's acts as if they were done by the person actually

controlling the corporate entity.

81.     Counter claimant Cross-Complainant alleges that Corporate Counter Cross-

Defendants were always, a mere shell or sham, without capital or severely undercapitalized

without stock or stockholders.  Corporate Counter Cross-Defendants were conceived, intended and

used by Counter Cross-Defendant Shareholders as a means of avoiding individual liability and for

the purpose of substituting a financially insolvent corporation in the place of Counter Cross-

Defendant shareholders.  At no time after Corporate Counter Cross-Defendants were formed were

any shares of stock authorized to be issued or issued, nor has any permit for the issuance of stock

been requested from the Commissioner of Corporations or the California Secretary of State or the

Hong Kong Stock Exchange.

82.     Counter claimant Cross-Complainant alleges that Corporate Counter Cross-

Defendants were/are so inadequately capitalized compared to business conducted by a legitimate

corporate Counter-Defendant cross-defendant that its capitalization was/is illusory or trifling.

83.     Counterclaimant Cross-Complainant alleges that Corporate Counter Cross-Defendants were at all times, the alter ego of Counter Cross-Defendant Shareholders and there has existed, at all times, a unity of interest between Counter-Defendants cross-defendants that any separateness has ceased to exist in that Counter Cross-Defendant Shareholders caused assets of Corporate Counter Cross-Defendants to be transferred to them without adequate consideration and withdrew funds from Corporate Counter Cross-Defendant's bank accounts for their personal use.

84.     Counter claimant Cross-Complainant alleges that at all times herein, Corporate Counter Cross-Defendants were a mere shell, instrumentality and conduit by which Counter Cross-Defendant Shareholders carried out their business in the names of the Corporate Counter Cross-Defendants exactly as they conducted it prior to forming Corporate Counter Cross-Defendants, exercising complete control and dominance of such businesses to an extent any individuality or separateness between Corporate Counter Cross-Defendants and Shareholder Counter Cross-Defendants, does not now or at any time mentioned existed. Counterclaimants allege Cross-Complainant alleges that Corporate Counter Cross-Defendants are, and at all times herein mentioned, were controlled, dominated, and operated by Counter Cross-Defendant Shareholders as their individual business and alter ego, in that the activities and business of Corporate Counter Cross-Defendants were carried out without the holding of Directors or Shareholders meetings, no records or minutes of any corporate proceedings were maintained, and Counter Cross-Defendant Shareholders entered into personal transactions with Corporate Counter Cross-Defendant without the approval of other directors, shareholders or members.

85.     Counter claimants Cross-Complainant allege that adherence to the fiction of separate existence of Corporate Counter Cross-Defendants as entities distinct from Counter Cross-Defendant Shareholders would permit abuse of the corporate privilege and would sanction fraud in

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

that Counter Cross-Defendant Shareholders caused funds to be withdrawn from Corporate Counter Cross-Defendant and distributed said funds without any consideration to Corporate Counter Cross-Defendants all for the purpose of avoiding and preventing attachment and execution by creditors, including Counter claimants Cross-Complainant, thereby rendering Corporate Counter Cross-Defendant insolvent and unable to meet their obligations.

86.     Counter claimant Cross-Complainant alleges that the adherence to the fiction of separate existence of Corporate Counter Cross-Defendants as entities distinct from Counter Cross-Defendant Shareholders would permit abuse of the corporate privilege and would produce an inequitable result because Counter Cross-Defendant Shareholders represented to Counter claimants Cross-Complainant that Corporate Counter Cross-Defendants would be responsible for the legal and financial obligations between the Parties under the terms and conditions of the contract documents at issue in this matter.

87.     During the litigation Counter-Claimant Cross-Complainant Hu discovered that CSPC-Dophen was not owned by CSPC- Limited, but was owned by CSPC Holding, which is owned by Dongchen Cai and the upper management team of CSPC, another entity, who sold it to CSPC-Limited in May 2017.

### CROSS-COMPLAINANT'S FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
**(Against Cross-Defendant CSPC Dophen Corporation
and CSPC-Pharmaceutical Limited and Roes 1-50)**

88.     Counter-Claimant Cross-Complainant alleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1-87 through above.

89.     Cross-Complainant has performed all conditions, covenants, and promises required by him under the terms of his Employment Agreement, attached hereto as Exhibit 2.

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

90.     In failing to pay Cross-Complainant the wages and unpaid vacation owing to him, CSPC-Dophen has breached its covenants, conditions and promises under the Employment Agreement.

91.     As a direct and foreseeable result of the above-referenced breaches, Cross-Complainant has been damaged in an amount not yet fully ascertained. Cross-Complainant is, therefore, entitled to recover compensatory and other damages in an amount to be determined at trial.

### CROSS-COMPLAINANT'S SECOND CAUSE OF ACTION
### VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200 *et seq.*
### (Against Cross-Defendants and Roes 1-50)

92.     Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 91 above.

93.     CSPC-Dophen's conduct, as described above, constitutes unfair, unlawful and/or fraudulent business acts or practices as defined by California Business & Professions Code section 17200 *et seq.*

94.     CSPC-Dophen's conduct, as alleged herein, constitutes unfair, unlawful and fraudulent business practices in violation of Section 17200 *et seq.* of the Business and Professions Code.  CSPC's failure to issue certificates of stock violates Corporations Code section 416(a).  In addition, its failure to distribute declared dividends is a breach of fiduciary duty and violates California law as it is an unlawful and unfair business practice.  Further, CSPC's failure to pay Dr. Hu's wages and unpaid vacation violates the California Labor Code including, without limitation, Labor Code section 203. CSPC's unlawful conduct also includes interfering with Cross-Complainant's property, amounting to conversion.

95.     As a direct and proximate cause of CSPC's acts of unlawful and/or unfair competition, Cross-Complainant has suffered actual injury and is entitled to restitution for unpaid wages and vacation, as well as injunctive relief.

**CROSS-COMPLAINANT'S THIRD CAUSE OF ACTION**
**DEFAMATION**
**(Against Cross-Defendants and Roes 1-50)**

96.     Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 95 above.

97.     Cross-Complainant is informed and believes, and on that basis alleges, that at various times, including within a few days of Cross-Complainant's termination by CSPC-Dophen, CSPC and its representatives defamed Cross-Complainant by publishing false statements concerning Dr. Hu's alleged theft of CSPC-Dophen funds and assets, among other false and defamatory statements.

98.     Cross-Complainant is informed and believes, and on that basis alleges, that the statements made by CSPC and its representatives were motivated by their hatred of the Cross-Complainant, were false, made intentionally, maliciously, willfully and wrongfully, with an intent to injure, disgrace and defame Cross-Complainant of his good name, reputation and employment, and with wanton and reckless disregard for the truth or falsity of the statements made.

99.     Cross-Complainant was damaged by the defamatory statements made by CSPC and its representatives in an amount to be determined at trial, including punitive damages.

**CROSS-COMPLAINANT'S FOURTH CAUSE OF ACTION**
**FAILURE TO PAY WAGES AND OTHER BENEFITS**
**(Against Cross-Defendant CSPC Dophen Corporation**
**and CSPC Pharmaceutical and Roes 1-50)**

100.     Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 99 above.

101.     Cross-Complainant was employed by CSPC as the director of the joint venture laboratory from 2011 until terminated by CSPC on or about July 21, 2017.

102.     Cross-Complainant substantially performed all his job duties and obligations under the Employment Agreement while employed by CSPC.

103.     At the time of his termination from employment with CSPC, CSPC, failed to pay Cross-Complainant wages earned by him, as well as, vacation time accrued.

104.     Cross-Complainant is informed and believes, and on that basis alleges, that CSPC's failure to pay wages was intentional and willful.  Further, because of CSPC's willful failure to pay

23

wages upon Cross-Complainant termination from employment, CSPC is subject to civil and statutory penalties equal to 30 days' pay pursuant to Labor Code section 203, subdivision (a), in an amount to be determined at trial.

**CROSS-COMPLAINANT'S FIFTH CAUSE OF ACTION**
**DECLARATORY RELIEF REGARDING MEMBERSHIP INTEREST**
**(Against CSPC Dophen Corporation, CSPC Limited and Roes 1-50)**

105.    Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 104 above.

106.    An actual controversy exists between CSPC-Dophen, CSPC Limited, and Cross-Complainant concerning Cross-Complainant's rights to an ownership interest in CSPC Limited pursuant to the transfer of funds from Dr. Hu to CSPC Limited as described above. CSPC and CSPC Limited maintain that Cross-Complainant has no membership interest and that such transfer did not occur.  Cross-Complainant believes that he owns 500,000 IPO shares of CSPC Limited by virtue of the promises made by CSPC-Dophen representatives and CSPC Limited representatives, and the transfer of funds to purchase said interest.

107.    As a result of this dispute, a judicial declaration is necessary to ensure that Cross-Complainant is provided with his membership interest representing 500,000 IPO shares of CSPC and that he is recognized as owning such membership interest for all purposes, including the sharing of profits.

108.    Accordingly, Cross-Complainant seeks a judicial determination as to the rights and obligations of the parties as to the purchase and sale of the membership interest in CSPC Limited.

**CROSS-DEFENDANT'S SIXTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Against Counter-Defendant CSPC Dophen Corporation' CSPC Limited and**
**Officers/Directors and ROES 1-50)**

109.    Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 108 above.

24

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

110.   As partners of a joint venture, CSPC owed a fiduciary duty to Dr. Hu.  Further, Dr. Hu put trust and confidence in CSPC to protect and further Cross-Complainant's interests.

111.   CSPC's fiduciary duty obligated it from refraining from doing anything to destroy or injure Cross-Complainant's right to receive the benefits of the joint venture.

112.   CSPC breached its fiduciary duties to Dr. Hu when it failed to properly maintain the funding of the laboratory as agreed, failed to pay Dr. Hu his salary upon termination of the employment relationship, failed to issue share certificates upon payment of consideration by Dr. Hu, failed to pay Dr. Hu dividends based on his ownership interest in CSPC, and failed to acknowledge the existence of Dr. Hu's ownership interest in CSPC.

113.   Such actions by CSPC were adverse and harmful to Cross-Complainant's interests and were done through a betrayal of Cross-Complainant's trust and confidences placed in CSPC.

114.   As a result of CSPC's breaches of its fiduciary duties, Cross-Complainant has suffered actual and consequential damages in an amount to be proven at trial.

**CROSS-COMPLAINANT'S SEVENTH CAUSE OF ACTION**
**CONVERSION**
**(Against Cross-Defendants CSPC-Limited, CSPC-Holdings and Dongchen Cai)**

115.   Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 113 above.

116.   On or about September 17, 2013, Dr. Hu wired ¥500,000 to a bank specified by CSPC Officer, Jumin Sun, with the intent of purchasing CSPC stock.  Dr. Hu is at all times mentioned herein, the owner of the funds transferred to CSPC as consideration for CSPC common stock and dividends.

117.   Cross-Complainant is informed and believes, and on that basis alleges, that on or about September 17, 2013, Jumin Sun informed Dr. Hu that the funds had been received by CSPC Limited.

118.   Cross-Complainant is further informed and believes, and on that basis alleges, that CSPC refuses to acknowledge Dr. Hu's membership interest in CSPC, that CSPC Limited and/or Dongchen Cai have retained possession of the funds wired by Dr. Hu and have improperly withheld

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

these dividends from Dr. Hu. Dr. Hu is at all times mentioned herein, the owner of the 500,000 shares of CSPC Limited IPO stock and dividends, and no longer authorizes CSPC to possess the same.

119.    Despite repeated requests for certificates or payment in the amount of the value of the shares, CSPC-Dophen, CSPC Limited and Dongchen Cai refuse to acknowledge Dr. Hu's membership interest.

120.    The conversion by CSPC-Dophen, CSPC Limited and Dongchen Cai was fraudulent and without Dr. Hu's consent. The Cross-Defendants induced Dr. Hu into transferring funds in exchange for shares of CSPC Limited.  By interfering with Dr. Hu's shares of stock, Cross-Defendants have fraudulently and intentionally converted his membership interest.

121.    As a direct and proximate result of CSPC, CSPC Limited and Dongchen Cai'sCai's intentional and substantial interference with Dr. Hu's property, Dr. Hu has suffered injury and harm in an amount to be proven at trial.

122.    As a result of CSPC, CSPC Limited and Dongchen Cai's acts of conversion, they are guilty of oppression, fraud and malice, entitling Dr. Hu to an award of punitive and exemplary damages.

**CROSS-COMPLAINANT'S EIGHTH CAUSE OF ACTION
BREACH OF FIDUCIARY DUTY
(Against All Cross-Defendants)**

123.    Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 122 above.

124.    As officers and directors of CSPC and CSPC Limited, Yingui Li, Jumin Sun, Jinxu Wang, and Dongchen Cai owed a fiduciary duty to CSPC and CSPC Limited's shareholders and to the corporation.

125.    This duty of loyalty requires the officers and directors to act in the best interest of the corporation and its shareholders.  As such, this fiduciary duty obligated it from refraining from doing anything that would injure the corporation or its shareholders.

126.   Dr. Hu purchased shares of CSPC Limited and is a shareholder of CSPC Limited.

127.   CSPC Limited breached its fiduciary duties to its shareholder, Dr. Hu, when it failed to properly issue share certificates upon payment of consideration by Dr. Hu, failed to pay Dr. Hu dividends based on his ownership interest in CSPC, and failed to acknowledge the existence of Dr. Hu's ownership interest in CSPC.

128.   Such actions by CSPC were adverse and harmful to the interests of the shareholders.

129.   As a result of Cross-Defendants' breaches of their fiduciary duties, Cross-Complainant has suffered actual and consequential damages in an amount to be proven at trial.

### CROSS-COMPLAINANT'S NINTH CAUSE OF ACTION
### FRAUD AND INTENTIONAL MISREPRESENTATION
### (Against All Cross-Defendants)

130.   Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 129 above.

131.   In August 2011, Dr. Wang misrepresented CSPC to invest $5 million per year into CSPC-Dophen to develop Dr. Hu's technology and Dr. Hu would have significant ownership in the "big pie" to be made. In many occasions, Mr. Cai assured Dr. Hu that CSPC only wanted China development right of projects from CSPC-Dophen and the rest would remain in US and belong to employees of CSPC-Dophen. In the summer of 2017, Cross-Defendant Cai misrepresented CSPC's intent to invest $30 million into the joint venture and Dr. Hu and other US employees would own 30% of the joint venture (Out of this 30%, Dr. Hu would own 50%).

132.   As alleged above, between July and September of 2013, CSPC representatives and cross-defendants made various misrepresentations to Dr. Hu concerning his purchase of certain CSPC Limited Stock.

133.   The representations made by the counter-defendants were false because no share certificates were issued and Cross-Complainant is informed and believes, and on that basis alleges, that the transaction was not recorded in the corporate book.

134.   Cross-Complainant is informed and believes, and on that basis alleges, that Cross-Defendants Yingui Li, Jinxu Wang, Jumin Sun, and Dongchen Cai knew that their representations were false at the time they made such representations because they knew CSPC had no intent to honor the stock purchase transaction.  On information and belief, instead the transaction was used as a tool to induce Dr. Hu to sign intellectual property agreements.

135.   Cross-Complainant is informed and believes, and on that basis alleges, that Cross-Defendants Yingui Li, Jinxu Wang, Jumin Sun, and Dongchen Cai intended that Dr. Hu rely on their representations because they knew with a reasonable degree of certainty that their representations concerning Dr. Hu's purchase of stock would induce Dr. Hu to sign the agreements and continue work for the joint venture laboratory.

136.   Dr. Hu reasonably relied on Cross-Defendants Yingui Li, Jinxu Wang, Jumin Sun, and Dongchen Cai's representations, and wired the funds necessary for the purchase and further relied on the statements that although no certificate would be issued, a recording of said stock transfer would be noted in the stock ledger.

137.   Dr. Hu was harmed by Cross-Defendants' misrepresentations in that he lost the benefit of the membership interest or CSPC has interfered with the interest to such an extent that it is lost, which was the basis of the transaction and was induced to enter into a contract under false pretenses

138.   Dr. Hu's reliance on Cross-Defendants' representations was a substantial factor in causing Dr. Hu's harm because but for the Cross-Defendants' false statements, Dr. Hu would have required certificates or proof of recording of the stock transfer.

139.   Cross-Defendants made the misrepresentations herein alleged with the intention of depriving Dr. Hu of property or legal rights or otherwise causing him injury.

140.   As a proximate result of Cross-Defendants' intentional misrepresentations, not only does Dr. Hu not have the value of his membership interest in an amount to be determined at trial, but he was also induced to wire funds to CSPC which it has retained.

## CROSS-COMPLAINANT'S TENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (Against All Cross-Defendants)

141.    Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 140 above.

142.    In August 2011, Dr. Wang misrepresented CSPC to invest $5 million per year into CSPC-Dophen to develop Dr. Hu's technology and Dr. Hu would have significant ownership in the "big pie" to be made. In many occasions, M.r Cai assured Dr. Hu that CSPC only wanted China development right of projects from CSPC-Dophen and the rest would remain in US and belong to employees of CSPC-Dophen. In the summer of 2017, Cross-Defendant Cai misrepresented CSPC's intent to invest $30 million into the joint venture and Dr. Hu and other US employees would own 30% of the joint venture (Out of this 30%, Dr. Hu would own 50%).

143.    As alleged above, between July and September of 2013, CSPC representatives and cross-defendants made various misrepresentations to Dr. Hu concerning his purchase of certain CSPC Limited Stock.

144.    The representations made by the cross-defendants were false because no share certificates were issued and Cross-Complainant is informed and believes, and on that basis alleges, that the transaction was not recorded in the corporate book.

145.    Cross-Complainant is informed and believes, and on that basis alleges, that Cross-Defendants Yingui Li, Jinxu Wang, Jumin Sun, and Dongchen Cai knew or should have known that their representations were false at the time they made such representations because they knew CSPC had no intent to honor the stock purchase transaction.   On information and belief, instead the transaction was used as a tool to induce Dr. Hu to sign the intellectual property agreements.

146.    Although Cross-Defendants may have honestly believed that their representations were true, Counter-Claimants Cross-Defendants had no reasonable grounds for believing the representations were true when made.

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

147.    Dr. Hu reasonably relied on Cross-Defendants Yingui Li, Jinxu Wang, Jumin Sun, and Dongchen Cai's representations, and wired the funds necessary for the purchase of 500,000 IPO shares and further relied on the statements that although no certificate would be issued, a recording of said stock transfer would be noted in the stock ledger.

148.    Dr. Hu was harmed by Cross-Defendants' negligent misrepresentations in that he lost the benefit of the membership interest which was the basis of the transaction.

149.    Dr. Hu's reliance on Cross-Defendants' negligent representations was a substantial factor in causing Dr. Hu's harm because but for the Cross-Defendants' false statements, Dr. Hu would have required certificates or proof of recording of the stock transfer.

### CROSS-COMPLAINANT'S ELEVENTH CAUSE OF ACTION
### FRAUD IN THE OFFER OF SECURITIES -
### Violations of Section 17(a) of The Securities Act
### (Counter Cross-Defendant CSPC-Pharmaceutical Only and ROES 1-10)

150.    Counter claimants Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 149 above.

151.    Counter Cross-Defendants, and each of them, by engaging in the conduct described above:

    a.   directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails: with scienter, employed devices, schemes, or artifices to defraud;

    b.   obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c.   engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

152.    By engaging in the conduct described above, each of Counter-Defendants~~Cross-Defendant~~ violated, and unless restrained and enjoined, will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. section 77q(a).

**CROSS-COMPLAINANT'S TWELFTH CAUSE OF ACTION**
**Fraud in Connection with the Purchase or Sale of Securities**
**Violations of Section 10(b) of The Exchange Act and Rule 10b-5 Thereunder**
**(Counter Cross-Defendant CSPC-Pharmaceutical and DOE Counter-Defendants ROES 1-10)**

153.    ~~Counter claimants~~ Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 151 above.

154.    Counter Cross-Defendants, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, using means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

    a.    employed devices, schemes, or artifices to defraud;

    b.    made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    c.    engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

155.    By engaging in the conduct described above, each of Counter-Defendants~~Cross-Defendant~~ violated, and unless restrained and enjoined will continue to violate each of, Section 1o(b) of the Exchange Act, 15 U.S.C. section 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

**CROSS-COMPLAINANT'S THIRTEENTH CAUSE OF ACTION**
**DECLARATORY RELIEF—STOCK OWNERSHIP**
**(Against All Cross-Defendants)**

156. Counter claimant Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 155 above.

157. An actual and substantial controversy exists between Counterclaimant and Counter-Defendant Cross-Complainant and Cross-Defendants concerning the purchase of CSPC-Limited Stock. Counter claimant Cross-Complainant has provided evidence of his possessory interest in the stock and has received annual dividends based on his stock ownership, while Counter Cross-Defendants continue to deny dividends and confirmation of stock ownership.

158. An actual and substantial controversy exists between the parties concerning their substantive legal rights and duties. Counter-Claimant Cross-Defendants contends that they are the rightful owners of the CSPC-Limited Stock and dividends, while Counter defendant Cross-Complainant states that he has the right to divest Counter-Claimant Cross-Defendants' of the stock and dividends at any time and has therefore refused to pay dividends and issue confirmation of the stock's existence. Counter-Claimant Cross-Complainant request the Court issue a declaratory judgment to the effect confirming said stock purchase and dividend ownership. Therefore, declaratory relief is appropriate under 28 U.S.C. §2201 et seq.

**CROSS-COMPLAINANT'S FOURTEENTH CAUSE OF ACTION**
**TITLE VII CIVIL RIGHTS ACT -RETALIATION**
**(Against All Cross-Defendants)**

159. Counter-Claimant Cross-Complainant realleges and incorporates by reference as though fully set forth herein the allegation in Paragraphs 1 through 158 above.

160. Counter-Claimant Cross-Complainant participated in activities encouraged by US government & protected by federal law such as applying federal grant for US owned technology

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB

development, protecting Federal grant supported IP from falling into foreign company' hands, and reporting his beliefs to FDA and law enforcement authorities related to and stated it likely negligently or purposely compromised Data submitted to FDA.

161.    Cross-Defendants subjected the Counter claimant Cross-Complainant to an adverse employment action, in having his employment terminated and being denied stock dividends, as a result of his participation in protected activities.

162.    As a result of Cross-Defendants' actions, Cross-Complainant has suffered actual and consequential damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainant requests the following relief:

1.    Demand for Jury Trial;

2.    For compensatory and other damages in an amount to be proven at trial;

3.    For restitution;

4.    For penalties under the California Labor Code;

5.    For punitive, exemplary, enhanced damages, and any other damages authorized by law;

6.    For payment of all wages and employment benefits owed;

7.    For a declaration of the liabilities, rights, duties and obligations of the parties, including a declaration that Cross-Complainant owns a percentage interest in CSPC-Dophen;

8.    For returning patent rights derived from PCT/US2015/035375 Homogenous Antibody Drug Conjugates via Enzymatic Method, production and use thereof.

9.    For license fees for the use of Chinese patent CN 106749608 A, 2015 in the development of IFN alfa by CSPC in China.

10.    Transfer of CSPC -transfer of Stock Share Certificates and Dividends owed to Cross-Complainant;

11.    For attorney's fees and costs of suit as allowed by law;

12.    For prejudgment and post-judgment interests as authorized by law;

13.    For such other and further relief as the Court deems just and proper.

DATED: April 8, 2019                          DURAN LAW OFFICE


By:_____/s/ JACK DURAN, JR
                                              JACK DURAN , JR.
                                              Attorneys for Counter-Claimant
                                              /Cross-Complainant ZHIXIANG HU,
                                              also known as SEAN HU

DEFENDANT SEANDR. HU'S SECOND AMENDED COUNTERCLAIM CROSS-COMPLAINT
DEMAND FOR JURY TRIAL

Case No. 2:17-CV-01895-MCE-DB