1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CSCP DOPHEN CORPORATION,                   No.  2:17-cv-1895 MCE DB PS

12                    Plaintiff,

13           v.                                  ORDER AND
                                                 FINDINGS AND RECOMMENDATIONS
14    ZHIXIANG HU,

15                    Defendant.

16

17          Defendant and counterclaimant, Dr. Zhixiang Hu, Ph.D., ("Dr. Hu"), is proceeding in this

18   matter pro se.  (ECF No. 68.)  Accordingly, this action has been referred to the undersigned

19   pursuant to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).  Pending before the undersigned are

20   Dr. Hu's motion for leave for alternative service of process, plaintiff CSCP Dophen Corporation's

21   partial motion to dismiss Dr. Hu's second amended counterclaim, and counter-defendant CSPC

22   Pharmaceutical Group Limited's motion to dismiss.  (ECF Nos. 218, 227, 236.)

23          For the reasons explained below, Dr. Hu's motion for leave for alternative service of

24   process is granted.  Also, the undersigned recommends that the motions to dismiss be granted

25   without further leave to amend.

26                                        **BACKGROUND**

27          Plaintiff CSPC Dophen Corporation, ("CSPC Dophen"), commenced this action on

28   September 11, 2017.  (ECF No. 1.)  Plaintiff filed a third amended complaint on May 7, 2019.

                                                  1

1   (ECF No. 190.)  Therein, plaintiff alleges that CSPC Dophen is a pharmaceutical and

2   development company based in Sacramento, California.  (Third Am. Compl. (ECF No. 190) at

3   2.[1])  Plaintiff hired defendant Dr. Hu in October of 2011, as Director of CSPC Dophen's Research

4   Laboratory.  (Id. at 3.)  Dr. Hu signed a Non-Disclosure Agreement and a Policy of Conflict of

5   Interest as part of that employment.  (Id. at 3-4.)

6        However, on April 24, 2014, Dr. Hu incorporated a competing entity named Dophen

7   Biomed, Inc., with the same address as CSPC Dophen.  (Id. at 4.)  Dr. Hu also established a bank

8   account and deposited plaintiff's money into that account.  (Id. at 5.)  And in April of 2017, Dr.

9   Hu filed an Investigational New Drug application with the Food and Drug Administration

10  ("FDA") using plaintiff's name without plaintiff's consent.  (Id.)  Plaintiff terminated Dr. Hu's

11  employment on July 21, 2017.  (Id. at 6.)

12       Based on these allegations the third amended complaint asserts causes of action for breach

13  of contract, breach of the duty of loyalty, violation of the Defend Trade Secrets Act, 18 U.S.C. §

14  1832(a)(1), violation of the Lanham Act, 15 U.S.C. § 1125(a), conversion, violation of the

15  California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502,

16  unfair competition, and defamation.  (Id. at 7-16.)

17       On November 24, 2019, Dr. Hu filed a motion seeking leave for alternative service of

18  process on several counter defendants.  (ECF No. 218.)  On December 6, 2019, Dr. Hu filed a

19  motion for a seven-day extension of time to file a second amended counterclaim.[2]  (ECF No.

20  223.)  Dr. Hu filed a second amended counterclaim on December 10, 2019.  (ECF No. 224.)

21       On December 23, 2019, plaintiff filed a partial motion to dismiss pursuant to Rule 12(6)

22  and to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  (ECF No. 227.)  On

23  January 10, 2020, Dr. Hu filed an opposition to the motion to dismiss and plaintiff filed an

24  opposition to Dr. Hu's motion for leave for alternative service of process on the counter-

25  ////

26  _____

27  [1] Page number citations such as this one are to the page number reflected on the court's CM/ECF
    system and not to page numbers assigned by the parties.

28  [2] Defendant's motion is grant *nunc pro tunc*.

1   defendants.  (ECF Nos. 230 & 231.)  The parties filed replies on January 17, 2020.  (ECF Nos.

2   232 & 234.)

3         On January 21, 2020, counter-defendant CSPC Pharmaceutical Group Limited, ("CSPC

4   Limited"), filed a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(2).  (ECF No.

5   236.)  Dr. Hu filed an opposition on February 28, 2020.  (ECF No. 249.)  CSPC Limited filed a

6   reply on March 6, 2020.  (ECF No. 251.)

7   **STANDARDS**

8   **I.**      **Legal Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(2)**

9         Federal Rule of Civil Procedure 12(b)(2) provides that "[a] defendant may move, prior to

10  trial, to dismiss the complaint for lack of personal jurisdiction."  Data Disc, Inc. v. Systems

11  Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  "Where a defendant moves to

12  dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of

13  demonstrating that jurisdiction is appropriate."  Schwarzenegger v. Fred Martin Motor Co., 374

14  F.3d 797, 800 (9th Cir. 2004).  However, "in the absence of an evidentiary hearing, the plaintiff

15  need only make a prima facie showing of jurisdictional facts."  Sher v. Johnson, 911 F.2d 1357,

16  1361 (9th Cir. 1990).

17  **II.**      **Legal Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(6)**

18        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

19  sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

20  1983).  "The rule applies equally to a counterclaim."  Hana Financial, Inc. v. Hana Bank, 500

21  F.Supp.2d 1228, 1232 (C.D. Cal. 2007).  "Dismissal can be based on the lack of a cognizable

22  legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri

23  v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A party is required to allege "enough

24  facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

25  544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

26  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

27  alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

28  ////

3

1    In determining whether a counterclaim states a claim on which relief may be granted, the

2    court accepts as true the allegations in the counterclaim and construes the allegations in the light

3    most favorable to the nonmoving party.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984);

4    Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se pleadings are held

5    to less stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S.

6    519, 520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

7    form of factual allegations.  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

8    Cir. 1986).

9    While Rule 8(a) does not require detailed factual allegations, "it demands more than an

10   unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A

11   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

12   elements of a cause of action."  Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 676

13   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

14   statements, do not suffice.").  Moreover, it is inappropriate to assume that the nonmoving party

15   "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways

16   that have not been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of

17   Carpenters, 459 U.S. 519, 526 (1983).

18   In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted

19   to consider material which is properly submitted as part of the counterclaim, documents that are

20   not physically attached if their authenticity is not contested and the defendant's counterclaim

21   necessarily relies on them, and matters of public record.  Lee v. City of Los Angeles, 250 F.3d

22   668, 688-89 (9th Cir. 2001).

23   **III.    Legal Standards Applicable to Motions to Strike Pursuant to Rule 12(f)**

24   A motion to strike pursuant to Rule 12(f) allows a court to strike "from any pleading any

25   insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

26   Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and

27   money that must arise from litigating spurious issues by dispensing with those issues prior to

28   trial[.]"  Whittlestone, Inc. v. Handi-Craft, Co., 618 F.3d 970, 973 (9th Cir. 2010) (quoting

4

1   Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)), *rev'd on other grounds by* Fogerty

2   v. Fantasy, Inc., 510 U.S. 517, 114 (1994); see also Sidney-Vinstein v. A.H. Robins Co., 697 F.2d

3   880, 885 (9th Cir. 1983).

4          A motion to strike is well-taken when "it is clear that the matter to be stricken could have

5   no possible bearing on the subject matter of litigation." LeDuc v. Kentucky Central Life Ins. Co.,

6   814 F.Supp. 820, 830 (N.D. Cal. 1992).  Impertinent allegations are those that are not responsive

7   or relevant to issues involved in the action and which could not be admitted as evidence in the

8   litigation.  Fantasy, Inc., 984 F.2d at 1527.  "Scandalous" within the meaning of Rule 12(f)

9   includes allegations that cast a cruelly derogatory light on a party or other person.  Talbot v.

10  Robert Mathews Distributing Co., 961 F.2d 654, 665 (7th Cir. 1992).

11         Ultimately, whether to grant a motion to strike applying these standards lies within the

12  sound discretion of the district court.  Fantasy, Inc., 984 F.2d at 1527; see also California Dept. of

13  Toxic Substances Control v. Alco Pacific, Inc., 217 F.Supp.2d 1028, 1032-33 (C.D. Cal. 2002).[3]

14                                    **ANALYSIS**

15  **I.      Dr. Hu's Motion for Alternative Service**

16         Dr. Hu seeks permission for alternative service of process on counter-defendants Yingui

17  Li, Jinxu Wang, Jumin Sun, and Donghchen Cai who are alleged to reside in China.[4]  (Alt. Serv.

18  Mot. (ECF No. 218) at 3.)  According to the second amended counterclaim, Yingui Li is "a

19  director of board of CSPC-Dohpen and officer of CSPC Limited."  (Sec. Am. Counterclaim (ECF

20  No. 224) at 2.)  Jinxu Wang is "the Chief Executive Officer of CSPC-Dophen."  (Id. at 3.)  Jumin

21  Sun "is the Chief Financial Officer of CSPC Limited[.]"  (Id. at 3.)  And Dongchen Cai "is the

22  Chairman of CSPC-Dophen, CSPC Holding Limited . . . and CSPC Limited."  (Id.)  The motion

23  ////

24

25  _____

    [3] Rule 12(f) motions are generally viewed with disfavor and not ordinarily granted.  Bureerong v.

26  Uvawas, 922 F.Supp. 1450, 1478 (C.D. Cal. 1996).  A motion to strike should therefore not be
    granted unless it is absolutely clear that the matter to be stricken could have no possible bearing

27  on the litigation.  Lilley v. Charren, 936 F.Supp. 708, 713 (N.D. Cal. 1996).

28  [4] The motion also sought alternative service on CSPC Limited, however, CSPC Limited has
    appeared in this action and moved to dismiss, rendering the request moot.

1   seeks service "on counter defendants' US Attorney" and is brought pursuant to Rule 4(f) of the

2   Federal Rules of Civil Procedure.  (Alt. Serv. Mot. (ECF No. 218) at 2.)

3
> Rule 4(f) of the Federal Rules of Civil Procedure provide the means
> by which a plaintiff may serve an individual located outside of the

4
> United States.  See Fed. R. Civ. P. 4(f).  Under Rule 4(f)(3), the court
> can authorize service on a foreign individual "by other means not

5
> prohibited by international agreement."  Fed. R. Civ. Pro. 4(f)(3).
> Other than the requirement that the method of service not be

6
> proscribed by international agreement, the rule imposes no limitation
> on the court's authority to authorize alternative means of service.

7

8   Brown v. China Integrated Energy, Inc., 285 F.R.D. 560, 563 (C.D. Cal. 2012).  "In fact, as long

9   as court-directed and not prohibited by an international agreement, service of process ordered

10  under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country."

11  Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002).  In this regard,

12  alternative service pursuant to Rule 4(f)(3) "is neither a 'last resort' nor 'extraordinary relief'" but

13  "is merely one means among several which enables service of process on an international

14  defendant."  Id. at 1015.

15      Here, Dr. Hu alleges that the foreign counter-defendants "have kept their Chinese

16  addresses secret," that the "Chinese government strictly prohibits any private investigation

17  service to obtain company/personal information" and that the Chinese government "would not

18  release such information to private parties, especially foreigners."  (Alt. Serv. Mot. (ECF No.

19  218) at 3.)  In this regard, the undersigned finds that Dr. Hu has demonstrated an "inability to

20  serve an elusive international defendant."  Rio, 284 F.3d at 1016.

21      Plaintiff CSPC Dophen opposes Dr. Hu's motion, arguing that the undersigned found in a

22  prior order that service on these counter-defendants pursuant to the Hauge Convention "is

23  mandatory."  (Pl.'s Opp.'n (ECF No. 231) at 3.)  And that is true.  See ECF No. 124 at 18.

24  However, that was in the context of analyzing the counter-defendants' motion to dismiss due to

25  improper service of process where Dr. Hu had not sought leave for alternative service of process

26  pursuant to Rule 4(f)(3).

27      Dr. Hu now seeks leave for alternative service of process under Rule 4(f)(3).  Plaintiff

28  "has not shown that service under Rule 4(f)(3) would violate an international agreement, and the

6

1   Hague Convention is certainly no bar." Xilinx, Inc. v. Godo Kaisha IP Bridge 1, 246 F.Supp.3d

2   1260, 1264 (N.D. Cal. 2017) (citing Richmond Techs., Inc. v. Aumtech Bus. Sols., No. 11-cv-

3   02460-LHK, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011) ("numerous courts have

4   authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies"));

5   see also Brown, 285 F.R.D. at 565 ("These courts rejected contentions similar to those made by

6   China Integrated, i.e., that the Hague Convention provided the only means to effect service on a

7   defendant residing in China.").

8           However,

9               [e]ven if facially permitted by Rule 4(f)(3), a method of service of
                process must also comport with constitutional notions of due process.
10              To meet this requirement, the method of service crafted by the
                district court must be "reasonably calculated, under all the
11              circumstances, to apprise interested parties of the pendency of the
                action and afford them an opportunity to present their objections."
12

13   Rio, 284 F.3d at 1016-17 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306,

14   314 (1950)).

15          Here, Dr. Hu seeks to effect service "on counter defendants' US attorney," counsel for the

16   plaintiff CSPC Dophen.  (Alt. Serv. Mot. (ECF No. 218) at 3.)  Plaintiff's counsel has filed a

17   declaration stating that they are not "authorized to accept service on behalf of" the counter-

18   defendants.  (Wilson Decl. (ECF No. 23101) at 2.)  However, "[c]ourts in the Ninth Circuit have

19   ordered service through United States-based counsel even when counsel has refused to accept

20   service on the ground that they do not represent the international defendants." Products and

21   Ventures International v. Axus Stationary (Shanghai) Ltd., CASE NO. 16-cv-0669 YGR, 2017

22   WL 1378532, at *4 (N.D. Cal. Apr. 11, 2017).

23          Regardless of whether counsel is authorized to accept service on behalf of the counter-

24   defendants, in this action counsel for plaintiff has also repeatedly appeared on behalf of the

25   counter-defendants.  (See ECF Nos. 27, 95, 96, 154, 236.)  In this regard, plaintiff's counsel has

26   also served as the foreign counter-defendants' United States-based counsel. "Service upon a

27   foreign defendant's United States-based counsel is a common form of service ordered under Rule

28   ////

7

1   4(f)(3)." Richmond Technologies, Inc. v. Aumtech Business Solutions, No. 11-2559 MMM

2   (PLAx), 2011 WL 2607158, at *13 (N.D. Cal. July 17, 2011).

3          Accordingly, for the reasons stated above, Dr. Hu's motion for alternative service of

4   process will be granted.

5   **II.     Plaintiff's Motion to Dismiss**

6          Plaintiff's motion to dismiss seeks an order dismissing Dr. Hu's second amended

7   counterclaims for defamation, declaratory relief regarding membership interest, grand

8   larceny/theft by conversion, fraud and intentional misrepresentation, fraud in the offer of

9   securities in interstate transactions, fraud in connection with the sale of securities, and retaliation.

10  (Pl.'s MTD (ECF No. 227) at 14-27.) Plaintiff's motion also seeks an order striking the second

11  amended counterclaim's request for punitive damages. (Id. at 28.)

12         **A.     Defamation (Third Cause of Action)**

13         In order to allege a prima facie claim for defamation, a party must allege facts that

14  establish the existence of "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged,

15  and that (e) has a natural tendency to injure or that causes special damage." Taus v. Loftus, 40

16  Cal.4th 683, 720 (Cal. 2007). Publication is communication of the allegedly defamatory

17  statement "to a third person who understands its defamatory meaning as applied to the [defamed

18  party]." Shively v. Bozanich, 31 Cal.4th 1230, 1242 (Cal. 2003).

19         Here, the second amended counterclaim for defamation simply alleges that "at various

20  times" plaintiff and "its representatives defamed" Dr. Hu "by writing to government agency NIH,

21  emailing and calling Dr. Hu's collaborators, and distributing false statements . . . concerning Dr.

22  Hu's alleged theft of CSPC-Dophen['s] funds and assets among other false and defamatory

23  statements." (Sec. Am. CC (ECF No. 224) at 28.) Elsewhere in the second amended

24  counterclaim, Dr. Hu alleges that plaintiff "disparaged Dr. Hu of stealing company funds and

25  creating a sham company in their communication to Dr. Hu's collaborators," asked entities "not

26  to do business with Dr. Hu," and "instructed its employee . . . to distribute defamatory statement

27  in Dr. Hu's hometown, that Dr. Hu was fired" by plaintiff. (Id. at 21.)

28  ////

8

These allegations lack the necessary specificity.  In this regard, none of these allegations clearly allege: (1) what allegedly defamatory statement was made; (2) when it was made; (3) to whom it was made; and (4) that the statement had a natural tendency to injure of cause special damages.  Accordingly, plaintiff's motion to dismiss this counterclaim should be granted.

**B.     Declaratory Relief (Fifth Cause of Action)**

A claim for

> . . . declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs.  If a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim.  This is because declaratory relief is intended to offer guidance in shaping future conduct so as to avoid breach of a party's obligations.  If that conduct has already matured, no such opportunity is present.  Consequently, where a party can allege a substantive cause of action, a declaratory relief claim should not be used as a superfluous second cause of action for the determination of identical issues subsumed within the first.

Public Service Mut. Ins. Co. v. Liberty Surplus Ins. Corp., 51 F.Supp.3d 937, 950 (E.D. Cal. 2014) (citations and quotations omitted); see also Britz Fertilizers, Inc. v. Bayer Corp., 665 F.Supp.2d 1142, 1173 (E.D. Cal. 2009).

Here, Dr. Hu seeks declaratory relief concerning the "rights to an ownership interest in CSPC Limited pursuant to the transfer of funds from Dr. Hu to CSPC Limited, and the ownership in CSPC-Dophen as promised[.]"  (Sec. Am. CC (ECF No. 224) at 30.)  However, as noted above, "declaratory relief is intended to offer guidance in shaping future conduct so as to avoid breach of a party's obligations."  Public Service Mut. Ins. Co., 51 F.Supp.3d at 950.  Where, as here, the alleged wrongful conduct has already occurred, or "matured," a claim for declaratory relief is "superfluous."  (Id.)

Moreover, the second amended counterclaim asserts several counterclaims against plaintiff for money and for which plaintiff has not sought dismissal.  Specifically, plaintiff has not sought dismissal of the second amended counterclaim's causes of action for breach of contract, violation of California Business & Professions Code § 17200, *et seq.*, failure to pay wages and other benefits, and breach of fiduciary duty.  A declaratory relief claim would be a superfluous

////

9

cause of action for the determination of identical issues subsumed within these remaining causes of action.

Accordingly, plaintiff's motion to dismiss this counterclaim should also be granted.

**C.  Grand Larceny/Theft by Conversion (Seventh Cause of Action)**

"To state a [counterclaim] for conversion under California law, a [defendant] must establish: (1) the [defendant's] ownership or right to possession of a certain piece of property; (2) the [plaintiff's] conversion of the property by a wrongful act or disposition of property rights; and (3) damages." Firoozye v. Earthlink Network, 153 F.Supp.2d 1115, 1129 (N.D. Cal. 2001). "'A [counterclaim] is stated for money had and received if the [plaintiff] is indebted to the [defendant] in a certain sum for money had and received by the [plaintiff] for the use of the [defendant].'" Murphy v. American General Life Ins. Co., 74 F.Supp.3d 1267, 1280 (C.D. Cal. 2015) (quoting Gutierrez v. Girardi, 194 Cal.App.4th 925, 937 (2011)).

Here, the second amended counterclaim alleges that "Dr. Jinxu Wang, as CEO of CSPC-Dophen, offered Dr. Hu to purchase 500,000 IPO incentive stock shares of CSPC Limited." (Sec. Am. CC (ECF No. 224) at 32.) "CSPC Limited's Chief Financial Officer Jumin Sun [later] informed Dr. Hu that the funds had been received by CSPC Limited" but Jumin Sun "did not issue any documents[.]" (Id.)

However, absent from these assertions is an allegation that plaintiff CSPC Dophen possessed any money belonging to Dr. Hu. And, as alleged by the second amended counterclaim, counter-defendant CSPC Limited is a Chinese Corporation, while plaintiff CSPC Dophen is a separate entity incorporated in New Jersey. (Id. at 2.) And Jumin Sun "is the Chief Financial Officer of CSPC Limited" not plaintiff CSPC Dophen. (Id. at 3.)

Accordingly, plaintiff's motion to dismiss this claim should be granted.

**D.  Claims of Fraud and Intentional Misrepresentation (Eighth Cause of Action); Fraud in the Offer of Securities (Ninth Cause of Action); and Fraud in Connection with the Sale of Securities (Tenth Cause of Action)**

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity

////

////

1   the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions

2   of a person's mind may be alleged generally."[5]  Fed. R. Civ. P 9(b).

3          "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct

4   against which they must defend, but also 'to deter the filing of complaints as a pretext for the

5   discovery of unknown wrongs, to protect [defendants] from the harm that comes from being

6   subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the

7   parties and society enormous social and economic costs absent some factual basis.'"  Bly–Magee

8   v. California, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting In re Stac Elec. Sec. Litig., 89 F.3d

9   1399, 1405 (9th Cir. 1996)).

10         Circumstances that must be stated with particularity pursuant to Rule 9(b) include the

11  "time, place, and specific content of the false representations as well as the identities of the

12  parties to the misrepresentations."  Sanford v. Memberworks, Inc., 625 F.3d 550, 558 (9th Cir.

13  2010) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)).  Likewise,

14  "[u]nder California law, the 'indispensable elements of a fraud claim include a false

15  representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'"

16  Vess v. Ciba—Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (quoting Moore v.

17  Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996)).

18         Here, none of these fraud-based causes of action allege with any specificity a claim upon

19  which relief can be granted.  In this regard, although the cause of action for fraud and intentional

20  misrepresentation is asserted against "Counter-Defendants," there are no allegations of

21  wrongdoing asserted against CSPC Dophen.  (Sec. Am. CC (ECF No. 224) at 33.)  Instead, the

22  _____

23  [5] "[T]he Ninth Circuit 'has not yet decided' the issue of whether negligent misrepresentation
    claims are subjected to Rule 9(b)."  Petersen v. Allstate Indem. Co., 281 F.R.D. 413, 416 (C.D.

24  Cal. 2012) (quoting Anschutz Corp. v. Merrill Lynch & Co., 785 F.Supp.2d 799, 823 (N.D. Cal.
    2011).  But see Puri v. Khalsa, 674 Fed. Appx. 679, 689 (9th Cir. 2017) ("The negligent

25  misrepresentation claim thus fails under Rule 9(b) as to each defendant."); Kelley v. Rambus,
    Inc., 384 Fed. Appx. 570, 573 (9th Cir. 2010) ("Kelley's state law claims for common law fraud

26  and negligent misrepresentation fail to meet the heightened pleading standards of Rule 9(b) of the
    Federal Rules of Civil Procedure.").  However, the undersigned "agrees with the line of cases that

27  hold that negligent misrepresentation is a species of fraud, and, hence, must be plead in
    accordance with Rule 9(b)."  Gilmore v. Wells Fargo Bank N.A., 75 F.Supp.3d 1255, 1270 (N.D.

28  Cal. 2014).

11

1   allegations of wrongdoing involve counter-defendants Yingui Li, Jinxu Wang, Jumin Sun, and

2   Dongchen Cai.  (Id.)

3        The claim for violation of 15 U.S.C. § 17(a) of the Securities Act—fraud in the offer of

4   securities in interstate transactions—merely alleges in a vague and conclusory manner that CPSC

5   Dophen offered "stock to Dr. Hu for purchase . . . with scienter to defraud[.]"  (Sec. Am. CC.

6   (ECF No. 224) at 34.)  Moreover, there is no "private right of action under section 17(a)."  In re

7   Washington Public Power Supply System Securities Litigation, 823 F.2d 1349, 1355 (9th Cir.

8   1987).

9        Finally, in support of the claim for fraud in connection with the sale of securities, the

10  second amended counterclaim simply alleges that CSPC Dophen engaged in a "concerted effort"

11  to sell "stock shares to Dr. Hu . . . with scienter to defraud[.]"  (Sec. Am. CC. (ECF No. 224) at

12  35.)  Absent from these allegations, however, is any specificity as to time, place, and/or specific

13  content of allegedly false allegations.  See generally City of Dearborn Heights Act 345 Police &

14  Fire Retirement System v. Align Technology, Inc., 856 F.3d 605, 619 (9th Cir. 2017) ("a plaintiff

15  must 'state with particularity facts giving rise to a strong inference that the defendant acted with

16  the required state of mind'").

17       Accordingly, plaintiff's motion to dismiss these counterclaims should be granted.

18       **E.     Retaliation in Violation of Title VII of the Civil Rights Act (Eleventh Cause of**

19           **Action)**

20       Title VII prohibits retaliation by an employer "against an employee for making a charge

21  or otherwise participating in a Title VII proceeding."  Nilsson v. City of Mesa, 503 F.3d 947, 953

22  (9th Cir. 2007).  Under § 704 of the Civil Rights Act of 1964, it is unlawful

23               for an employer to discriminate against any of his employees . . .
                 because [the employee] has opposed any practice made an unlawful
24               employment practice by [Title VII], or because [the employee] has
                 made a charge, testified, assisted, or participated in any manner in an
25               investigation, proceeding, or hearing under [Title VII].

26  42 U.S.C. § 2000e–3 (2000).  To make out a prima facie case of retaliation under Title VII, a

27  plaintiff must allege facts demonstrating that "(1) she engaged in a protected activity, (2) she

28  suffered an adverse employment action, and (3) there was a causal link between her activity and

                                                   12

1   the employment decision." Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir.

2   2003) (quoting Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th

3   Cir. 2003)); see also Strother v. Southern California Permanente Medical Group, 79 F.3d 859,

4   868 (9th Cir. 1996) (setting out same three elements for FEHA retaliation claim).

5          Plaintiff asserts that this counterclaim should be dismissed because Dr. Hu failed to allege

6   that he first exhausted his administrative remedies and fails to allege participation in a protected

7   activity.  (Pl.'s MTD (ECF No. 227) at 27-28.) "In order to bring a Title VII claim in district

8   court, a plaintiff must first exhaust her administrative remedies." Sommatino v. U.S., 255 F.3d

9   704, 707 (9th Cir. 2001).  A plaintiff exhausts their "administrative remedies by filing a charge

10  with the EEOC or an equivalent state agency, like the DFEH, and receiving a right-to-sue letter."

11  Scott v. Gino Morena Enterprises, LLC, 888 F.3d 1101, 1106 (9th Cir. 2018).

12         Here, Dr. Hu admits that this "claim was put under the wrong law per his former

13  attorney," and instead should have been a "Retaliatory Discrimination Actions Under the

14  Whistleblower Protection Provisions of the Federal False Claims Act[.]"  (Def.'s Opp.'n (ECF

15  No. 230) at 9.)  That, however, is not the claim that was asserted.  Accordingly, plaintiff's motion

16  to dismiss this counter claim should also be granted.

17         **F.     Punitive Damages**

18         The undersigned previously struck a prayer for punitive damages as it pertained to

19  counterclaims for breach of contract, failure to pay wages and other benefits, and violation of

20  Business & Professions Code § 17200, et. seq.  (ECF No. 124 at 11.)  Dr. Hu has again asserted a

21  request for punitive damages without any explanation of why punitive damages are available in

22  this action.[6] See Berkla v. Corel Corp., 302 F.3d 909, 917 (9th Cir. 2002) ("punitive damages,

23  which are designed to punish and deter wrongful conduct, are not available in breach of contract

24  actions"); In re Wal-Mart Stores, Inc. Wage and Hour Litigation, 505 F.Supp.2d 609, 620 (N.D.

25  _____

26  [6] "Although punitive damages are generally not allowed for breach of contract claims, where the
    gravamen of the action is not a breach of contract as such, but rather is the fraud inherent in the
    breach, exemplary damages may be awarded." Bowman v. Associates Home Equity Service, No.

27  CIV-S-06-0463 DFL EFB PS, 2008 WL 906276, at *5 (E.D. Cal. Mar. 31, 2008).  Here,
    however, the undersigned has already recommended that the second amended counterclaim's

28  fraud-based counterclaims be dismissed.

1  Cal. 2007) ("it is settled law that punitive damages are not available under section 17200");

2  Czechowski v. Tandy Corp., 731 F. Supp. 406, 410 (N.D. Cal. 1990) (availability of "statutory

3  penalties precludes an award of punitive damages" for failure to pay wages).

4        Accordingly, the undersigned finds that plaintiff's motion to strike this portion of the

5  second amended counterclaim should be granted.

6        **G.**    **Further Leave to Amend**

7        For the reasons stated above, the undersigned will recommend that plaintiff's partial

8  motion to dismiss and to strike be granted.  The undersigned has carefully considered whether Dr.

9  Hu may further amend his pleading to state a claim upon which relief could be granted.  "Valid

10  reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility."

11  California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir.

12  1988); see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293

13  (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have

14  to allow futile amendments).  In light of the deficiencies noted above, and Dr. Hu's repeated

15  inability to successfully amend, the undersigned finds that granting further leave to amend would

16  be futile.

17  **III.**    **Counter-Defendant CSPC Limited's Motion to Dismiss**

18        Counter-defendant CSPC Limited moves to dismiss Dr. Hu's second amended

19  counterclaim based on a lack of personal jurisdiction pursuant to Rule 12(b)(2).  (ECF No. 236.)

20  Dr. Hu bears the burden of establishing that jurisdiction is proper, although he need only make a

21  prima facie showing of jurisdictional facts to withstand the motion to dismiss.  Brayton Purcell

22  LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010).

23        "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

24  over persons."  Daimler AG v. Bauman, 571 U.S. 117, 125 (2014).  "Because California's long-

25  arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional

26  analyses under state law and federal due process are the same."  Schwarzenegger v. Fred Martin

27  Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004).  "For a court to exercise personal jurisdiction

28  over a nonresident defendant consistent with due process, that defendant must have 'certain

14

minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Federal courts may exercise either general or specific personal jurisdiction.  General personal jurisdiction is found where the nonresident defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  "To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their 'longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'" Mavrix Photo, Inc., 647 F.3d at 1224 (quoiting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006)).

Specific personal jurisdiction is found where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts[.]" CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1075 (9th Cir. 2011).  "[T]hat is, jurisdiction [is] based on the relationship between the defendant's forum contacts and plaintiff's claims." Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007).  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).  However, "the 'primary concern' is 'the burden on the defendant.'" Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S. Ct. 1773, 1780 (2017) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

A three-part test has been developed by the Ninth Circuit to analyze an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities
> or consummate some transaction with the forum or resident thereof;
> or perform some act by which he purposefully avails himself of the

15

1  privilege of conducting activities in the forum, thereby invoking the
   benefits and protections of its laws;

2

3  (2) the claim must be one which arises out of or relates to the
   defendant's forum-related activities; and

4  (3) the exercise of jurisdiction must comport with fair play and
   substantial justice, i.e. it must be reasonable.

5

6  Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).

7      As was true of the first amended counterclaim, the second amended counterclaim fails to

8  allege any jurisdictional facts that could support either general or specific personal jurisdiction.

9  To the contrary, the second amended counterclaim alleges that CSPC Limited "is a Chinese

10 Corporation organized under the laws of Hong Kong, with its office in Hong Kong, and

11 headquarters in China."  (Sec. Am. CC (ECF No. 224) at 2.)

12     The second amended counterclaim does makes various vague and conclusory allegations

13 with respect to CSPC Limited.  For example, it alleges that CSPC Limited paid half of Dr. Hu's

14 salary.  (Id. at 8.)  "Reimbursed the spending each month[.]"  (Id. at 10.) And that in

15 "June 2017, CSPC Limited's four executives  . . . came to CSPC Dophen to force Dr. Hu to

16 transfer DP303c from Dophen Biomed to CSPC Limited."  (Id. at 18.)  Moreover, "CSPC-

17 Dophen is merely Atler ego of CSPC Limited."  (Id. at 2.)

18     However, "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to

19 justify imputing one entity's contacts with a forum state to another for the purpose of establishing

20 personal jurisdiction."  Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015).  "A basic tenet

21 of American corporate law is that the corporation and its shareholders are distinct entities."  Dole

22 Food Co. v. Patrickson, 538 U.S. 468, 474 (2003).

23     Imputed general jurisdiction over a foreign defendant that has an in-state affiliate may be

24 found upon satisfaction of the alter ego test.  "To satisfy the alter ego test, a plaintiff must make

25 out a prima facie case (1) that there is such unity of interest and ownership that the separate

26 personalities of the two entities no longer exist and (2) that failure to disregard their separate

27 identities would result in fraud or injustice."  Ranza, 793 F.3d at 1071 (quotation omitted).

28 ////

"The 'unity of interest and ownership' prong of this test requires 'a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.'" Id. (quoting Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001)). "This test envisions pervasive control over the subsidiary, such as when a parent corporation 'dictates every facet of the subsidiary's business — from broad policy decisions to routine matters of day-today operation.'" Id. (quoting Unocal, 248 F.3d at 926). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." Id. (citing Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003) ). "[A] plaintiff does not meet the 'unity of interest and ownership' prong when the evidence shows only 'an active parent corporation involved directly in decision-making about its subsidiaries' holdings,' but each entity 'observes all of the corporate formalities necessary to maintain corporate separateness.'" Id. (internal brackets omitted) (quoting Unocal, 248 F.3d at 928).

Here, CPSC Limited has asserted and provided a declaration in support of the following:

> CSPC Limited is a foreign Corporation organized under the laws of Hong Kong with its principal place of business in Hong Kong. CSPC Limited does not own or lease any real estate in California or otherwise maintain an office in the state. CSPC Limited has no mailing address or a designated agent for service of process in California. CSPC Limited does not conduct business in California. CSPC Limited has never applied for or held a business license from the State of California. CSPC Limited has never employed any employees in California. CSPC Limited has no bank accounts in the state and does not pay California state taxes. CSPC Limited has a subsidiary named CSPC Dophen Corporation ("CSPC Dophen"). CSPC Limited and CSPC Dophen are separate entities. They are individually formed entities with different boards of directors. They maintain separate bank accounts, funds, and assets. They also maintain separate corporate records. CSPC Limited has never paid salaries to CSPC Dophen's employees, including Sean Hu. CSPC Limited does not control CSPC Dophen's HR function or payroll. CSPC Limited does not share employees or offices with CSPC Dophen.

(CSPC Limited's MTD (ECF No. 236) at 9-10) (citations omitted).

Dr. Hu's opposition disputes these assertions but does so through vague and conclusory allegations. For example, the opposition asserts that there "was no corporate formality at CSPC Dophen but fraud." (Dr. Hu's Opp.'n (ECF No. 249) at 6). That there was "Commingled Finance and Assets Among CSPC Limited and Its Subsidiaries." (Id. at 7.) And that "CSPC

17

1  Dophen is an Alter Ego of CSPC Limited."  (Id. at 8.)  To the extent these vague and conclusory

2  allegations are supported, they are supported by citation to the second amended counterclaim or

3  to evidence that is entirely unclear, such as emails, some of which are written in Chinese, Wechat

4  message screen shots, and purchasing records, the import of which are entirely unclear.   (ECF

5  Nos. 97 & 99.)

6      Under these circumstances, the undersigned cannot find that Dr. Hu has made a prima

7  facie showing that jurisdiction over CSPC Limited is proper.  Accordingly, CSPC Limited's

8  motion to dismiss should be granted.

9                          **CONCLUSION**

10     Accordingly, IT IS HEREBY ORDERED that:

11     1.  Defendant's November 14, 2019, motion for alternative service of process (ECF No.

12  218) is granted;

13     2.  Within twenty-eight days of the date of this order defendant shall serve process on the

14  counter defendants' United States based counsel/plaintiff's counsel pursuant to Fed. R. Civ. P.

15  4(f)(3); and

16     3.  Defendant's December 6, 2019, motion for a seven-day extension of time (ECF No.

17  223) is granted *nunc pro tunc*.

18     Also, IT IS HEREBY RECOMMENDED that:

19     1.  CSPC Dophen's December 23, 2019 motion to dismiss (ECF No. 227) be granted as

20  articulated above;

21     2.  CSPC Limited's January 21, 2020 motion to dismiss (ECF No. 236) be granted and

22  CSPC Limited be dismissed from this action; and

23     3.  Defendant not be granted further leave to amend.

24     These findings and recommendations are submitted to the United States District Judge

25  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

26  being served with these findings and recommendations, any party may file written objections with

27  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

28  Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served

1   and filed within fourteen days after service of the objections.  The parties are advised that failure

2   to file objections within the specified time may waive the right to appeal the District Court's

3   order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4   Dated:  July 20, 2020

5

6

7                                                   DEBORAH BARNES
                                                    UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   DLB:6
     DB\orders\orders.pro se\cspc1895.mtd2.f&rs
27

28