UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CSPC DOPHEN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ZHIXIANG HU,<br><br>Defendant. | No. 2:17-cv-1895 MCE DB PS<br><br>FINDINGS AND RECOMMENDATIONS |

Defendant and counterclaimant, Dr. Zhixiang Hu, Ph.D., ("Dr. Hu"), is proceeding in this matter pro se. (ECF No. 68.) Accordingly, this action has been referred to the undersigned pursuant to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). Pending before the undersigned is a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure filed by counter-defendants Yingui Li, Jinxu Wang, Jumin Sun, and Dongchen Cai ("counter-defendants"). (ECF No. 281.) For the reasons explained below, the undersigned recommends that the motion to dismiss be granted without further leave to amend.

## BACKGROUND

Plaintiff CSPC Dophen Corporation, ("CSPC Dophen"), commenced this action on September 11, 2017. (ECF No. 1.) Plaintiff is proceeding on a third amended complaint filed on May 7, 2019. (ECF No. 190.) Therein, plaintiff alleges that CSPC Dophen is a pharmaceutical and development company based in Sacramento, California. (Third Am. Compl. (ECF No. 190)

at 2.[1]) Plaintiff hired defendant Dr. Hu in October of 2011, as Director of CSPC Dophen's Research Laboratory. (Id. at 3.) Dr. Hu signed a Non-Disclosure Agreement and a Policy of Conflict of Interest as part of that employment. (Id. at 3-4.)

However, on April 24, 2014, Dr. Hu incorporated a competing entity named Dophen Biomed, Inc., with the same address as CSPC Dophen. (Id. at 4.) Dr. Hu also established a bank account and deposited plaintiff's money into that account. (Id. at 5.) And in April of 2017, Dr. Hu filed an Investigational New Drug application with the Food and Drug Administration ("FDA") using plaintiff's name without plaintiff's consent. (Id.) Plaintiff terminated Dr. Hu's employment on July 21, 2017. (Id. at 6.)

Based on these allegations the third amended complaint asserts causes of action for breach of contract, breach of the duty of loyalty, violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832(a)(1), violation of the Lanham Act, 15 U.S.C. § 1125(a), conversion, violation of the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502, unfair competition, and defamation. (Id. at 7-16.)

On December 10, 2019, Dr. Hu filed a second amended counterclaim. (ECF No. 224.) On November 25, 2020, counter-defendants filed the pending motion to dismiss. (ECF No. 281.) Dr. Hu filed an opposition on December 24, 2020. (ECF No. 284.) Counter-defendants filed a reply on December 31, 2020. (ECF No. 285.) The motion was taken under submission on January 4, 2021. (ECF No. 286.)

**STANDARDS**

**I.     Legal Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) provides that "[a] defendant may move, prior to trial, to dismiss the complaint for lack of personal jurisdiction." Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). However, "in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).

**ANALYSIS**

**I.  Counter-Defendants' Motion to Dismiss**

Counter-defendants move to dismiss Dr. Hu's second amended counterclaim based on a lack of personal jurisdiction pursuant to Rule 12(b)(2). (ECF No. 281.) Dr. Hu bears the burden of establishing that jurisdiction is proper, although he need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010); see also Chirag v. MT Marida Marguerite Schiffahrts, 604 Fed. Appx. 16, 19 (2d Cir. 2015) ("A prima facie case [of personal jurisdiction] requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place.").

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Federal courts may exercise either general or specific personal jurisdiction. General personal jurisdiction is found where the nonresident defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). "To determine whether a

nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their 'longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'" Mavrix Photo, Inc., 647 F.3d at 1224 (quoiting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006)).

Specific personal jurisdiction is found where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts[.]" CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1075 (9th Cir. 2011). "[T]hat is, jurisdiction [is] based on the relationship between the defendant's forum contacts and plaintiff's claims." Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)) (internal quotation marks omitted). However, "the 'primary concern' is 'the burden on the defendant.'" Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S. Ct. 1773, 1780 (2017) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

A three-part test has been developed by the Ninth Circuit to analyze an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).

Here the second amended counterclaim fails to allege facts establishing that any counter-defendant had either continuous and systematic contacts with California or a cause of action arising directly out of a counter-defendant's forum contacts. Instead, the second amended

4

counterclaim simply asserts in a vague and conclusory manner that the counter-defendants are "subject to personal jurisdiction in this Court." (Sec. Am. CC (ECF No. 224) at 2-3.)

However, according to the allegations found in the second amended counterclaim each counter-defendant is a Chinese citizen. (Id. at 2-3.) Counter-defendant Sun "does not reside in US[.]" (Id. at 3.) And with respect to counter-defendant Cai, the second amended counter claim does not allege any allegations related to residence or contacts with California but simply alleges that "[h]e is subject to personal jurisdiction in this Court[.]" (Id. at 3-4.)

The second amended counter claim alleges that counter-defendants Li and Wang were working in Sacramento at the time of their "wrongful acts[.]" (Id. at 2-3.) However, the second amended counter claim is essentially devoid of allegations describing an allege counter-defendant's contacts with this forum. For example, the second amended counterclaim alleges that counter-defendant "Wang made a revised offer without IP transfer clause to Dr. Hu." (Id. at 8.) That on March 5, 2013, counter-defendant "Li begged Mr. Cai via Jinxu Wang to send the money or to risk costly legal fees[.]" (Id. at 12.) That [n]ear the end of March 2013, [counter-defendant] Wang told Dr. Hu that Dr. Hu would be able to purchase 500,000 IPO shares of CSPC-Limited at 1.0 RMB/share." (Id. at 14.) Where these actions took place, however, is not stated.

The few instances in which the second amended counterclaim provides any detail with respect to the place where events occurred paints a mixed picture at best. In this regard, the second amended counterclaim does allege that on July 3, 2017, counter-defendants Wang and Li "came from China to California" to meet Dr. Hu. (Id. at 18.) However, the second amended counterclaim also alleges that "[d]uring Dr. Hu's visit to CSPC Limited at Shijiazhuang City, China, [counter-defendant] Wang promised Dr. Hu that CSPC Limited would invest $5M each year[.]" (Id. at 7.) That "Dr. Hu went to China to meet Dongchen Cai a few times." (Id. at 12.) And that "[i]n May, 2017, Dr. Hu flew to Beijing to meet [counter-defendant] Cai." (Id. at 17.)

Moreover, the counter-defendants' alleged wrongful acts appear to concern the parties' interactions with CSPC Limited, a foreign corporation organized under the laws of Hong Kong over which this court lacks personal jurisdiction. (ECF No. 261 at 17-18.) In this regard, the second amended counter claim asserts a claim for declaratory relief against the counter-

defendants concerning "the transfer of funds from Dr. Hu to CSPC Limited[.]" (Id. at 30.) A claim for breach of fiduciary duty against the counter-defendants is based on "promised . . . stock options at CSPC Limited[.]" (Id. at 31.) A claim for grand larceny is premised on Dr. Hu's purchase of "500,000 IPO incentive stock shares of CSPC Limited." (Id. at 32.) Claims of fraud against the counter-defendants are premised on the allegation that the counter-defendants "and CSPC Limited had no intent to honor [plaintiff's] stock purchase transaction" and failed to disclose "certain information in writing" in relation to the sale of stock shares. (Id. at 33, 35.)

"[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy [the] pleading burden." Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007). Here, the second amended counterclaim lacks even bare bones assertions of minimum contacts with the forum. While the motion to dismiss could be granted for this reason alone, in support of their motion to dismiss counter-defendants have offered evidence that they have had few contacts with California. (Defs.' MTD (ECF No. 281) at 12-13.)

In response to this evidence Dr. Hu "could not simply rest on the bare allegations of [the counterclaim], but rather was obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction[.]" Amba Marketing Systems, Inc. v. Jobar Intern., Inc., 551 F.2d 784, 787 (9th Cir. 1977). In opposing defendants' motion to dismiss, however, Dr. Hu asserts vague and conclusory allegations of "Corporate Fraud," that fail to address why the court has personal jurisdiction over any counter-defendant.

For example, Dr. Hu's opposition alleges that because the counter-defendants are "board members and officers who represent CSPC Dophen," the court has "general jurisdiction" over them because "CSPC Dophen is under general jurisdiction of this court." (Opp.'n (ECF No. 284) at 3.) Dr. Hu goes on to argue that "CSPC Dophen was owned by CSPC Holdings Limited (for short CHL)" but "CSPC Dophen's registration and its Bylaw" signed by the counter-defendants "stated CSPC-Dophen was 100% owned by China Pharmaceutical Group Limited." (Id. at 4.) "CHL is privately owned and controlled by" counter-defendant Cai "while CSPC Limited is a public company traded on Hong Kong stock exchange." (Id.) To "legalize the sale of CSPC

Dophen" the counter-defendants "engineered a Share Holders' meeting" that took place in Shijiazhuang, Hebei Province, China." (Id.) How these allegations establish personal jurisdiction over any counter-defendant, however, is entirely unclear.

Dr. Hu's opposition goes on to assert that "Piercing the Corporate Veil" is appropriate because the "counterclaim defendants used their corporate privilege at three connected companies, CSPC Dophen, CHL and CSPC Limited, to lure Dr. Hu with false corporate information[.]" (Id. at 6.) Such allegations invoke the alter ego test, satisfaction of which allows for imputed general jurisdiction over a foreign defendant that has an in-state affiliate.

"To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." Ranza v. Nike, Inc., 793 F.3d 1059, 1071 (9th Cir. 2015) (quotation omitted). "Underlying both of these factors is a general presumption in favor of respecting the corporate entity. Disregarding the corporate entity is recognized as an extreme remedy, and '[c]ourts will pierce the corporate veil only in exceptional circumstances.'" Calvert v. Huckins, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (quoting National Precast Crypt Co. v. Dy–Core of Pennsylvania, Inc., 785 F. Supp. 1186, 1192 (W.D. Pa. 1992). "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." Ranza, 793 F.3d at 1070.

"The 'unity of interest and ownership' prong of this test requires 'a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.'" Id. at 1071 (quoting Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001)). "This test envisions pervasive control over the subsidiary, such as when a parent corporation 'dictates every facet of the subsidiary's business — from broad policy decisions to routine matters of day-today operation.'" Id. (quoting Unocal, 248 F.3d at 926). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." Id. (citing Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003)). "[A] plaintiff does not meet the 'unity of interest and ownership' prong when the

evidence shows only 'an active parent corporation involved directly in decision-making about its subsidiaries' holdings,' but each entity 'observes all of the corporate formalities necessary to maintain corporate separateness.'" Id. (internal brackets omitted) (quoting Unocal, 248 F.3d at 928).

Moreover, "[a] basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." Dole Food Co. v. Patrickson, 538 U.S. 468, 474 (2003). Accordingly, "[u]nder the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person. Rather, there must be a reason for the court to disregard the corporate form." Davis v. Metro Productions, Inc., 885 F.2d 515, 520 (9th Cir. 1989) (citations omitted). In this regard, Dr. Hu "has the burden of establishing that the individual defendant personally directed the activities toward the forum state giving rise to the complaint." Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F. Supp. 743, 750 (C.D. Cal. 1995).

In short,

> jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary. Each defendant's contacts with the forum State must be assessed individually.

Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).

Here, Dr. Hu has failed to offer sufficient evidence or allegations to support the exercise of personal jurisdiction over the counter-defendants.

**II.    Further Leave to Amend**

For the reasons stated above, the undersigned finds that the counter-defendants' motion to dismiss should be granted. The undersigned has carefully considered whether Dr. Hu could further amend the counterclaim to state a claim upon which relief could be granted and over which the court would have personal jurisdiction over a counter-defendant. Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988); see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983)

8

(holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

In light of the deficiencies noted above and the arguments found in the briefing, the undersigned finds that it would be futile to grant Dr. Hu further leave to amend.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Counter-defendants' November 25, 2020 motion to dismiss (ECF No. 281) be granted;

2. Counter-defendants Yingui Li, Jinxu Wang, Jumi Sun, and Dongchen Cai be dismissed from this action; and

3. Defendant not be granted further leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 28, 2021

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.pro se\cspc1895.mtd3.f&rs

9